**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Leisa Beatrice GIBSON,**
**Defendant-Appellant.**

No. 86–2398.

United States Court of Appeals,
Fifth Circuit.

June 22, 1987.

Roland E. Dahlin, II, Federal Public Defender, Thomas S. Berg, Asst. Federal Public Defender, Houston, Tex., for defendant-appellant.

Henry K. Oncken, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before REAVLEY, JOHNSON and DAVIS, Circuit Judges.

ON MOTION FOR REHEARING

REAVLEY, Circuit Judge:

Treating the suggestion for en banc rehearing as a motion for panel rehearing, we grant the motion, withdraw our unpublished opinion of March 23, 1987, and substitute the following opinion.

Leisa Gibson was convicted on five counts for armed robbery within a Houston post office. On counts one and two, she was found guilty of robbery of mail, money or property of the United States in violation of 18 U.S.C. § 2114.[1] On counts three

---

1. § 2114. Mail, money or other property of United States

 Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous

and four, she was found guilty of robbery of government property from two persons within the special territorial jurisdiction of the United States, in violation of 18 U.S.C. § 2111.[2] On count five, she was found guilty of possession and receipt of stolen postal money orders, in violation of 18 U.S.C. § 500.[3] We vacate and remand for resentencing.

## Facts

Leisa Gibson entered the United States Post Office, Denver Harbor Station, in Houston, Texas, on April 10, 1984, carrying a large straw purse. She approached one of the window clerks, displayed a handgun in the purse, and demanded money. The teller gave Gibson the cash in her drawer along with "bait" money orders, whose serial numbers had been recorded for tracing in the event of a robbery. Gibson repeated the process with respect to a second window clerk, and left the building. As she entered her automobile, post office employees recorded its license number and noted its description. This easily led to the identification of Gibson, and in her apartment the police found the straw purse with the cash and bait postal orders. A loaded gun with Gibson's fingerprints was found in her car.

Gibson was sentenced to three concurrent five-year terms on the two counts finding violations of section 2111 and the one violation of section 500. Imposition of a mandatory sentence of twenty-five years (enhanced by the use of a dangerous weapon putting lives in jeopardy) for the two violations of section 2114 was suspended in favor of five years' probation to begin after service of the three concurrent five-year prison sentences.

Gibson raises three points of error on appeal. She argues first that she could not be convicted both of robbery of postal money orders under section 2114 and of receiving and possessing postal money orders under section 500. Second, she argues that she could not be convicted both under the robbery-on-United States-territory statute, section 2111, and under the postal statute, section 2114. Finally, Gibson argues that the trial court's instructions on counts one and two were impermissibly broader than the grand jury's indictment on these counts. We decide the first two of Gibson's three arguments in her favor.

## Discussion

### I.

In *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), the Court held that a defendant convicted of bank robbery cannot also be convicted and sentenced for receiving and possessing the proceeds of that robbery. In commenting on the bank robbery statute, 18 U.S.C. § 2113, the Court stated that the possession subsection of the robbery statute (section 2113(c)) "was not designed to increase the punishment for him who robs a bank but only to provide punishment for those who receive the loot from the robber." *Id.* at 419, 79 S.Ct. at 454.

■ Gibson was convicted under the postal robbery statute, section 2114, rather than the bank robbery statute, section 2113, which was at issue in *Heflin*. In *United States v. Crawford*, 576 F.2d 794, 800 (9th Cir.1978), however, the Ninth Circuit observed that "[a]lthough *Heflin* and its progeny have dealt primarily with the

weapon, or for a subsequent offense, shall be imprisoned twenty-five years.
18 U.S.C. § 2114.

2. **§ 2111. Special maritime and territorial jurisdiction**
 Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes from the person or presence of another anything of value, shall be imprisoned not more than fifteen years.
18 U.S.C. § 2111.

3. **§ 500. Money Orders**

. . . . .

Whoever receives or possesses any such money order form with the intent to convert it to his own use or gain or use or gain of another knowing it to have been embezzled, stolen or converted;

. . . . .

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.
18 U.S.C. § 500.

provisions of 18 U.S.C. § 2113, the federal bank robbery statute, ... the same rule and rationale should apply to convictions under § 2114 and § 500." We agree. As the Ninth Circuit states, "[t]here is no obvious legislative intent to pyramid the penalties of § 500 and § 2114." *Id.* Indeed, in *United States v. Wright*, 661 F.2d 60, 62 (5th Cir.1981), we stated that a defendant could not be convicted of both robbery of a post office, under section 2114, and possession of property stolen in the robbery, under 18 U.S.C. § 641. We discern no difference between the two possession statutes, section 500 and section 641, on the question whether Congress "was trying to reach a new group of wrongdoers [or] to multiply the offense of the bank robbers themselves." *Heflin*, 358 U.S. at 420, 79 S.Ct. at 454.

 The government argues that Gibson "waived her objection to the submission of count 5" because she requested a jury issue on possession of the postal money orders. This argument has no force for several reasons. In the first place, the attack here is not upon judicial error but upon an illegal sentence. *See Heflin*, 358 U.S. at 418, 79 S.Ct. at 453. Furthermore, there was no waiver here. Gibson's theory at trial was that she could be convicted for possession or robbery, but not both. Her counsel stated to the court: "under the indictment, the defendant cannot be convicted under ... both the possession count and the other four counts." This sufficiently put the trial court on notice of defense's objection to being found guilty on both counts. Moreover, in *Ball v. United States*, 470 U.S. 856, 859, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985), the prosecution relied upon a single act "to establish a convicted felon's unlawful receipt and his unlawful possession of the same firearm," in violation of 18 U.S.C. § 922(h) and 18 U.S.C. § 1202(a). The Court held that defendant could be indicted and prosecuted under both sections, and the jury could be instructed on both. "Should the jury return guilty verdicts for each count, however, the District Judge should enter judgment on only one of the statutory offenses." *Id.* at 865, 105 S.Ct. at 1674.

## II.

Gibson's second argument is that the convictions under both section 2111 and section 2114 were improper, for where an offense violates both a specific and a more general statute, the prosecutor "must charge a defendant under the specific statute rather than a more general statute." In support of this statement, Gibson cites *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978) and *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).

*Simpson* and *Busic*, the two Supreme Court cases cited by Gibson, are not dispositive of the issue she raises. Both involved the propriety of convicting a defendant for the same conduct under 18 U.S.C. § 924(c), a statute that provides enhanced penalties for using a firearm in committing a felony, and another statute. *Simpson* raised the question whether a defendant could be sentenced under 18 U.S.C. § 924(c) and also 18 U.S.C. § 2113(d), a bank robbery statute which itself provides an increased penalty for the use of firearms in committing the robbery. The Court did not reach the constitutional issue of double jeopardy, for it asked first "whether Congress intended to subject the defendant to multiple penalties for the single criminal transaction in which he engaged." 435 U.S. at 12, 98 S.Ct. at 913. Contrary to Gibson's assertion, the Court did not hold that as a general matter a defendant only can be convicted under a specific statute, and not a more general one, where both apply to the same conduct. Rather, upon a study of the particular legislative history of section 924(c), the Court concluded that Congress did not intend to pyramid the penalties it provided upon those provided by other enhanced penalty statutes, such as section 2113(d).

In the instant case, section 2114 is a statute that provides an increased penalty where a firearm is used in the robbery, and it is similar in nature to section 2113(d). However, section 2111 is not such a statute, and it bears no resemblance at all to section 924(c). *Simpson* therefore does

not provide an answer to the question whether a defendant can be convicted under both section 2111 and section 2114 for the same conduct. *Busic* is no more helpful. The Court there held that a defendant could not be convicted under both section 924(c) and 18 U.S.C. § 111, which provides an enhanced penalty for using a dangerous weapon in assaulting a federal officer. We must look to other writings of the Supreme Court for a solution to our problem.

In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Court was presented with the question whether, under the Harrison Anti-Narcotic Act, two penalties may be imposed for a single action. The action in question was a violation of both the section forbidding the sale of certain drugs except in or from their original stamped package, and the section forbidding the sale of such drugs not in pursuance of a written order of the person to whom the drug is sold. As the *Blockburger* Court noted, "there was but one sale, and the question is whether, both sections being violated by the same act, the accused committed two offenses or only one." *Id.* at 304, 52 S.Ct. at 182. The Court concluded that two offenses were committed by the single act, on the basis of the rule that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* In *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), the Court noted that although the *Blockburger* opinion did not discuss the legislative history of the anti-narcotics statutes with which it dealt, the test the Court there set out was intended as a guide to statutory interpretation.

■ In *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), the Court discussed the relationship between the Double Jeopardy Clause of the Fifth Amendment and the *Blockburger* test as a rule of statutory construction. "The Fifth Amendment guarantee against double jeopardy embodies ... one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress." *Id.* at 689, 100 S.Ct. at 1436. A federal court that imposes multiple punishments not authorized by Congress violates both the Double Jeopardy Clause and "the constitutional principle of separation of powers." *Id.* *Whalen* involved statutes governing the District of Columbia: Congress had provided a penalty for rape and a penalty for felony murder, i.e., "the killing of another person in the course of committing rape *or* robbery *or* kidnapping *or* arson, etc." *Id.* at 694, 100 S.Ct. at 1439. The Court rejected the government's argument that "felony murder and rape are not the 'same' offense under *Blockburger,* since the former offense does not in all cases require proof of a rape." *Id.* For, in the actual *Whalen* case, "proof of rape is a necessary element of proof of the felony murder, and [the Court is] unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense." *Id.*

Shortly after *Whalen,* the Court decided *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), a double jeopardy case that involved successive trials rather than multiple sentencing pursuant to one trial. The case nevertheless raised the question of when a single action constitutes more than "one offense." The state of Illinois in *Vitale* first convicted defendant for the misdemeanor of failing to reduce the speed of his motor vehicle to avoid a collision, and subsequently sought to indict him for the involuntary manslaughter of two small children who died as a result of the same collision. The Court explained:

> We accept, as we must, the Supreme Court of Illinois' identification of the elements of the offenses involved here. Under Illinois law, involuntary manslaughter with a motor vehicle involves a homicide by the "reckless operation of a motor vehicle in a manner likely to cause death or great bodily harm." *In re Vi-*

*tale,* 71 Ill.2d [229], at 239, 16 Ill.Dec. [456], at 460, 375 N.E.2d [87], at 91 [1978]. The charge of failing to reduce speed on which respondent was convicted requires proof "that the defendant drove carelessly and failed to reduce speed to avoid colliding with a person." *Id.,* at 238, 16 Ill.Dec., at 460, 375 N.E.2d, at 91. *Id.* at 416, 100 S.Ct. at 2265. The problem in the *Vitale* case was that it was unclear what sort of reckless operation of a motor vehicle the state would seek to prove in order to establish its manslaughter case. Were Illinois to rely on Vitale's failure to slow to avoid an accident as the reckless act proving manslaughter, the successive prosecution would be for the "same offense." "Yet, reckless driving causing death might still be proved if, for example, a driver who had not been paying attention could have avoided the accident at the last second, had he been paying attention, by simply swerving his car." *Id.* at 419, 100 S.Ct. at 2266. Thus, if Vitale's recklessness-causing-death consisted in his failure to reduce speed, the state could not prosecute him for manslaughter, since the failure to reduce speed is a lesser included offense of the manslaughter. On the other hand, if Vitale's recklessness-causing-death consisted in some other aspect of his driving, such as failure to keep a proper lookout, the manslaughter would be a separate offense from the failure to reduce speed. The Court remanded the case.

In *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), defendants challenged their convictions, on separate counts, of conspiracy to import marijuana and conspiracy to distribute marijuana. The violations arose from a single agreement or conspiracy, but with dual objectives. The Court held that the two "statutory provisions at issue here clearly satisfy the rule announced in *Blockburger.*" *Id.* at 339, 101 S.Ct. at 1142. Moreover, the Court stated:

The conclusion we reach today regarding the intent of Congress is reinforced by the fact that the two conspiracy statutes are directed to separate evils presented by drug trafficking. "Importation" and "distribution" of marihuana impose diverse societal harms, and, as the Court of Appeals observed, Congress has in effect determined that a conspiracy to import drugs and to distribute them is twice as serious as a conspiracy to do either object singly.

*Id.* at 343, 101 S.Ct. at 1144.

■ Turning from this history to the statutes at issue in the instant case, we agree with Gibson's contention that she cannot be convicted for the same action under both section 2111, proscribing robbery within the special maritime and territorial jurisdiction of the United States, and section 2114, proscribing robbery of one having lawful custody of mail or other property of the United States. As an initial matter, however, we disagree with Gibson's contention that section 2111 is a more general statute and section 2114 more specific. Section 2114, originally enacted as part of the Post Office Act of 1792, was intended largely as a protection for mail carriers. *See United States v. Spears,* 449 F.2d 946, 950–51 (D.C.Cir.1971). Obviously, the work of mail carriers frequently takes them outside of the special territorial jurisdiction of the United States. On the other hand, robbery within the special maritime or territorial jurisdiction of the United States can take place on the high seas, within United States admiralty jurisdiction, on lands reserved or acquired for the use of the United States, on islands containing deposits of guano, or aboard aircraft belonging to the United States or a United States citizen while in flight over the high seas or other waters within the admiralty and maritime jurisdiction of the United States. 18 U.S.C. § 7. Moreover, as section 2114 proscribes robbery of a mail custodian outside special United States jurisdiction, section 2111 proscribes robbery of persons other than mail custodians within the special United States jurisdiction. The relationship between sections 2111 and 2114, then, is not that of general to specific, nor does one define a lesser included offense of the other. Rather, the two sections are like two circles that just barely overlap. Gibson's conduct places her at the point of overlap, for she has robbed two persons

having custody of United States property and has done so within United States territory.

Sections 2111 and 2114 derive from statutes virtually as old as the Republic itself, and we have been unable to locate any written record dealing with the question whether Congress intended that a person could be convicted under both sections for one and the same action. We must therefore attempt to glean that intent relying on the principles enunciated in *Blockburger* and its progeny.

■ It is true that a mechanical application of the *Blockburger* rule may appear to dictate the conclusion that Gibson has committed two offenses. To convict under section 2111, the prosecutor must prove that the robbery occurred in a post office (or other place of special United States jurisdiction), while to convict under section 2114, he must prove that the robbery victim was a person having custody of United States mail or other United States property. We do not believe, however, that the differences here would satisfy the intended purpose of the *Blockburger* test. In *Blockburger* itself, the two facts to be proven constituted two evils that Congress sought to combat: selling drugs not from a stamped package and selling drugs not in pursuance of a written order of the person to whom the drug is sold. By contrast, in the instant case one of the two facts to be proven under one section but not the other is strictly jurisdictional: that the crime occurred within United States jurisdiction. As one writer on the subject has stated, "when offenses differ only because they have different jurisdictional bases they should not be punished cumulatively." Note, *Twice in Jeopardy*, 75 Yale L.J. 262, 321 (1965). A jurisdictional fact, while a prerequisite to prosecution under a particular statute, is not in itself an evil that Congress seeks to combat.

A brief review of the Supreme Court opinions discussed above confirms that in each case where the Court has imputed to the legislature an intent to allow double conviction, the Court in effect discerned a legislative intent to combat separate evils.

*Gore* upheld convictions for sale of narcotics not in pursuance of a written order of the person to whom the drugs were sold, the sale and distribution of drugs not in the original stamped package, and facilitating concealment of the drugs. *Whalen* reversed convictions for felony-murder and rape. While rape and killing do represent separate evils, the felony-murder at issue in *Whalen* was a combination of the two and separate from neither. In *Vitale,* the Court remanded for the state court to determine whether Vitale's driving was the commission of two evils that the state sought to combat. If it violated only the proscription against failing to reduce speed to avoid an accident, Vitale committed only one offense. If his driving also violated a second proscription, for instance, one against failing to keep a proper lookout, he could be convicted of a second offense for the same action. In *Albernaz,* the Court explicitly notes that "the two conspiracy statutes [at issue there] are directed to separate evils presented by drug trafficking." 450 U.S. at 343, 101 S.Ct. at 1144. In no case where the Court has upheld a double conviction for a single act was one of the "facts" to be proven to satisfy *Blockburger* a purely jurisdictional fact. In these cases, the two statutes at issue each require proof of a fact that relates to an evil that the legislature seeks to combat.

■ In section 2114, Congress sought to penalize robbery of United States mail or other property, and in section 2111 it sought to penalize robbery within United States jurisdiction. When we subtract the jurisdictional element from section 2111, that section becomes merely a robbery statute. Viewed in this light, Gibson's offense under section 2111 becomes comparable to a lesser included offense of her violation of section 2114. The relationship between the two convictions is akin to that between felony-murder and rape where rape is the underlying felony, or reckless homicide with an automobile and failing to reduce speed where the failure to reduce speed is the underlying act of recklessness.

This is not to say that a defendant can never be convicted under both section 2111

and section 2114. In the one reported case we have located in which a prosecutor sought convictions under both sections, we noted without comment that defendant was "[c]onvicted of robbery of postal clerks and postal customers, 18 U.S.C. §§ 2114, 2111, and 7." *United States v. Watkins*, 741 F.2d 692, 693 (5th Cir.1984). The feature that distinguishes *Watkins* from the instant case is that there defendant robbed "two postal clerks and two customers," *id.*, whereas here Gibson has robbed no customers at all.

Our conclusion that Gibson cannot be convicted and sentenced under both section 2111 and section 2114 for the same action is buttressed by the principle that "[l]enity is a tool of statutory construction." *United States v. Thompson*, 624 F.2d 740, 742 (5th Cir.1980). As the Court has stated on several occasions, " 'When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.' " *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958) (quoting *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955)).

■ The Supreme Court has recently detailed the proper procedure to be followed in cases where a defendant has been convicted for two offenses but should have been convicted for only one. The case must be remanded to the district court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions. The remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Congress' intention. One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense. See *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983).

The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. See *Benton v. Maryland*, 395 U.S. 784, 790–791, 89 S.Ct. 2056, 2060–2061, 23 L.Ed.2d 707 (1969); *Sibron v. New York*, 392 U.S. 40, 54–56, 88 S.Ct. 1889, 1898–1899, 20 L.Ed.2d 917 (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

We emphasize that while the Government may seek a multiple-count indictment against a felon for violations of [the two sections] where a single act establishes [violation of both], the accused may not suffer two convictions or sentences on that indictment. If, upon the trial, the District Judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the District Judge should enter judgment on only one of the statutory offenses.

*Ball v. United States*, 470 U.S. 856, 864–65, 105 S.Ct. 1668, 1673–74, 84 L.Ed.2d 740 (1985). We therefore remand the case so that the district judge may enter judgment against Gibson and choose between offenses in accord with this opinion.

### III.

Gibson's third point of error is that the trial court's instruction to the jury on the offense of armed robbery of two postal clerks, 18 U.S.C. § 2114, was a constructive enlargement of the grand jury's indictment. We disagree.

The trial court instructed the jury that "the government must prove the following three essential elements": that the defendant willfully assaulted a person having custody of money of the United States; that she acted with the intent to rob the money;

and that in doing so, the defendant put the person's life in jeopardy by the use of a dangerous weapon. Gibson points out that while the jury instruction includes assault as an element of the offense, the indictment nowhere uses the word "assault."

From the fact that a different word is used in the jury instruction than is used in the indictment, however, it does not follow without more that the indictment has been constructively enlarged. In this case, the element of assault was added in the conjunctive, placing a greater burden on the government to prove its case than the burden it would have shouldered without the element of assault. On the issue of constructive enlargement of an indictment, "the 'crucial question ... is whether [the defendant] was convicted of an offense not charged in the indictment.'" *United States v. Ylda*, 653 F.2d 912, 913 (5th Cir. 1981) (quoting *Stirone v. United States*, 361 U.S. 212, 213, 80 S.Ct. 270, 271, 4 L.Ed.2d 252 (1960)). Under the court's charge, the jury had to find Gibson guilty of assault *and* of the offense charged in the indictment. Thus, there actually is no chance whatever that she was convicted of an offense not charged in the indictment.

Gibson cites *United States v. Bizzard*, 615 F.2d 1080 (5th Cir.1980), in which we reversed a conviction under section 2113, the bank robbery statute, because the trial judge added the element of assault in the jury instruction. In that case the indictment charged only jeopardizing lives by use of a dangerous weapon and did not charge the defendant with assault. The jury charge in *Bizzard* impermissibly allowed the government to obtain a conviction by proving assault and not proving what was charged by the indictment. The court held that the charge permitted the jury to convict the defendant of an offense not charged in the indictment. In Gibson's trial the jury was required to convict her as charged in the indictment—and more. She has no complaint.

We vacate the district court's judgment and sentence. We remand the case with instructions that judgment be entered and Gibson be sentenced consistently with this opinion.

VACATED AND REMANDED.