United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 28, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-41219

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SHANNON WAYNE AGOFSKY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

Before: DeMOSS, BENAVIDES, and PRADO, Circuit Judges.

BENAVIDES, Circuit Judge:

In this direct criminal appeal, Shannon Agofsky challenges his two capital murder convictions and two death sentences, which arise out of a single killing. We vacate the convictions because, under the circumstances of this case, the dual murder convictions violated Agofsky's double jeopardy rights. We remand for the Government to elect which conviction and death sentence should remain.

## I. BACKGROUND

The Government charged Agofsky with two types of capital murder. Count 1 of the indictment charged Agofsky with premeditated murder by a federal prisoner serving a term of life imprisonment, in violation of 18 U.S.C. §§ 1118, 1111 (2000 & 2003

Supp.) ("Murder by a Federal Frisoner"). Count 2 of the indictment charged Agofsky with premeditated, first degree federal murder, in violation of 18 U.S.C. § 1111 (2000 & 2003 Supp.) ("Federal Murder").

The two murder charges stemmed from a single death. The evidence adduced at trial showed that Agofsky murdered Luther Plant, an inmate incarcerated with Agofsky at the federal penitentiary in Beaumont, Texas. Agofsky killed Plant by striking him to the floor and then repeatedly stomping his head and neck into the concrete. The jury returned a guilty verdict on both counts of the indictment.

At the sentencing phase, the Government introduced evidence of Agofsky's prior murder conviction. He had killed a bank president during the course of an armed robbery by tying him to a chair and throwing him into a lake. The Government also presented the jury with evidence that Agofsky had engaged in prior serious misconduct while in prison and bragged about his violent tendencies. The jury found several statutory and non-statutory aggravating factors, including that the murder was especially heinous, cruel, or depraved. After considering a variety of mitigating factors, the jury found that a death sentence was warranted as to each count of conviction. In this appeal, Agofsky challenges his convictions and sentences on a number of grounds.

## II.  DISCUSSION

### A.  DOUBLE JEOPARDY

Agofsky first argues that the two-count indictment charged him twice for the same offense, thereby violating the Double Jeopardy Clause.  The parties agree that we should review *de novo*.  They also agree that *Blockburger v. United States*, 284 U.S. 299 (1932), controls our analysis of whether the offenses are the same for double jeopardy purposes.  "Under the *Blockburger* test, each offense must contain an element not contained in the other; if not, they are the same offense . . . and double jeopardy bars subsequent punishment or prosecution."  *United States v. Sharpe*, 193 F.3d 852, 863 (5th Cir. 1999).

### 1.  ANALYSIS

As charged by the Government in this case, both Federal Murder and Murder by a Federal Prisoner require proof of (1) an unlawful killing (2) with malice aforethought and (3) premeditation.[1]  The parties agree that Murder by a Federal Prisoner contains a unique additional element, i.e., that the defendant be a federal prisoner serving a life sentence.  The only dispute is whether Federal Murder contains an element not contained in Murder by a Federal Prisoner.

---

[1] Since the Government does not contend that the premeditation element charged in the Count 1 of the indictment was superfluous for double jeopardy purposes, we do not consider the complex issues that might be raised by such an argument here.

3

The Government argues that Federal Murder's jurisdictional element—that the crime must occur "within the special maritime and territorial jurisdiction of the United States"—is distinct from any jurisdictional element found in Murder by a Federal Prisoner.[2] *See* 18 U.S.C. § 1111(b). The Government argues further that such a distinct jurisdictional element renders two crimes different for double jeopardy purposes. Because we reject the second contention, we do not consider the first.

The Government's argument overlooks that we have held that jurisdictional elements do not count for double jeopardy purposes. In *United States v. Gibson*, 820 F.2d 692 (5th Cir. 1987), this Court addressed a double jeopardy challenge to convictions under two federal robbery statutes. One statute proscribed "robbery of one having lawful custody of mail or other property of the United States." *Id.* at 697. The other prohibited "robbery within the special maritime and territorial jurisdiction of the United States." *Id.* The *Gibson* Court agreed with the Government that the two robbery statutes each contained a distinct element. *Id.* at 698. *Gibson* nonetheless held that conviction under both statutes violated the Double Jeopardy Clause:

We do not believe . . . that the differences [between the

_____

[2] The Murder-by-a-Federal-Frisoner statute does not explicitly state the same jurisdictional element as the Federal Murder statute, though the former does provide that the murder must occur while the defendant is "confined in a Federal correctional institution." 18 U.S.C. § 1118.

4

statutes] here would satisfy the intended purpose of the *Blockburger* test. In *Blockburger* itself, the two facts to be proven constituted two evils that Congress sought to combat . . . . By contrast, in the instant case one of the two facts to be proven under one section but not the other is strictly jurisdictional: that the crime occurred within United States jurisdiction. As one writer on the subject has stated, "when offenses differ only because they have different jurisdictional bases they should not be punished cumulatively." A jurisdictional fact, while a prerequisite to prosecution under a particular statute, is not in itself an evil that Congress seeks to combat.

*Id.* (internal citation omitted).

The jurisdictional element that the *Gibson* Court refused to consider for double jeopardy purposes is identical to the element the Government relies on in the case at bar.

We have some concern with the reasoning of *Gibson*. *See United States v. Harrison*, 64 F.3d 491, 496 (9th Cir. 1995) (rejecting *Gibson* because it "ignores the fact that Congress may have strong interests in treating crimes occurring within the jurisdiction of the United States differently from those occurring elsewhere"). However, *Gibson* is still binding on this panel. *See United States v. Avants*, 278 F.3d 510, 518 n.7 (5th Cir. 2002). We must follow *Gibson* "until either this court sitting *en banc* or the Supreme Court says otherwise." *See Cardenas v. Dretke*, 405 F.3d 244, 253 (5th Cir. 2005). Therefore, we hold that Federal Murder, as charged in this indictment, is the same offense for double jeopardy purposes as Murder by a Federal Prisoner. Accordingly, we vacate Agofsky's convictions for Federal Murder and Murder by a Federal

5

Prisoner; on remand the district court should enter a guilty verdict, as the Government may elect, of either Federal Murder or Murder by a Federal Prisoner. *See United States v. Goff*, 847 F.2d 149, 179 (5th Cir. 1988) (on reh'g).

## 2. REMEDY

Agofsky maintains that *neither* of his death sentences can stand in light of this double jeopardy violation, citing *United States v. Causey*, 185 F.3d 407 (5th Cir. 1999). We disagree.

Agofsky's reliance on *Causey* is misplaced. After finding a double jeopardy violation, *Causey* did vacate each of the three death sentences at issue there. However, such a course was required in *Causey* primarily because "[t]he jury did not make separate recommendations concerning the appropriate penalties for each count of conviction." *Id.* at 423. Rather than addressing each death-eligible count separately, the jury simply made one generalized finding that "the aggravating factors sufficiently outweighed any mitigation to justify a sentence of death." *Id.* at 412. By contrast, in the case at bar, the jury made separate recommendations concerning the appropriate penalty for each count in the indictment. In light of the jury's distinct recommendations on each count, *Causey* is inapposite.

The separate sentencing recommendations not only distinguish *Causey* but also explain why Agofsky's case falls under the general rule that reversal of one conviction on double jeopardy grounds

6

does not require resentencing on any remaining count. No such resentencing is required on a surviving count so long as it is "clear" that the invalid conviction "did not lead the district court to impose a harsher sentence" on the surviving count. *United States v. Narviz-Guerra*, 148 F.3d 530, 534 (5th Cir. 1998); *United States v. Dixon*, 132 F.3d 192, 196 (5th Cir. 1997). Here, it is clear that Agofsky's conviction for either murder did not lead the jury to recommend a harsher sentence for the other, inasmuch as the verdict forms strictly segregated the jury's sentencing decision between the two counts. Accordingly, the district court should reenter on remand, pursuant to the jury's previous sentencing verdict, a death sentence as to the murder conviction the Government elects to retain.

## B.    THE JURY NOTE AS EVIDENCE OF AN ARBITRARY FACTOR

Agofsky's second claim is that his death sentence was imposed under the influence of an arbitrary factor. During the punishment phase deliberations, the jury sent a note to the district court as follows: "If a verdict of life is imposed, will the jury be polled as it will for the death penalty[?]" With Agofsky's agreement, the district court sent a response note. It advised the jury, "After a verdict is returned but before the jury is discharged, the court must on a party's request, or on its own, poll the jurors individually." Agofsky never complained below regarding the jury note or the court's response. He now contends, however, that the

7

note shows that some jurors feared being polled individually due to possible negative public reaction to imposition of a life sentence. This fear, he alleges, was an arbitrary factor that tainted the jury's decision to recommend death.

### 1. STANDARD OF REVIEW

Although the parties agree that Agofsky failed to preserve his claim, they dispute the standard of review. In particular, the parties disagree over how to interpret *Jones v. United States*, 527 U.S. 373 (1999). However, we need not decide which standard is correct because Agofsky's arbitrary-factor claim fails even under *de novo* review.

### 2. ANALYSIS

The Federal Death Penalty Act requires a court of appeals to vacate a death sentence if it "finds" that the sentence was imposed "under the influence of passion, prejudice or any other arbitrary factor." 18 U.S.C. § 3595(c)(2) (2000) (emphasis added). In light of the statutory language requiring a "find[ing]" of arbitrariness before granting relief, and in accord with persuasive authority, we hold that the circumstances must show that an arbitrary factor "most likely" influenced the sentence. *See United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000). The jury note pointed to by Agofsky does not make such a showing.

Other explanations for the jury note seem equally plausible as Agofsky's theory that the jurors voted for death to avoid negative

8

public reaction. Perhaps the jurors were considering evading the unanimity requirement and rendering a secretly-divided verdict for life, which they could accomplish if they would not be polled individually for a life verdict. Alternatively, perhaps potential public reaction was on the minds of the jurors, but they ultimately refused to let their personal concerns impact their duty to follow the law and base their verdict on the evidence.[3] Neither of these explanations seem materially more or less likely than Agofsky's theory. In any event, Agofsky's speculations as to the significance of the jury's note do not suffice for us affirmatively to find an arbitrary influence. Thus, Agofsky's claim fails.

## C. SUFFICIENCY OF EVIDENCE THAT CRIME WAS ESPECIALLY HEINOUS, CRUEL OR DEPRAVED

Agofsky's next claim of error in his sentencing is that the evidence is insufficient to support the jury's finding that he committed the murder in an "especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim." 18 U.S.C. § 3592(c)(6) (2000) (listing this as a statutory aggravator). "As with any criminal verdict, [this Court] reviews jury findings of aggravating factors by asking whether, after viewing the evidence in a light most favorable to the

---

[3] In this regard, the Government points out that the note was sent in the morning only two minutes after deliberations reconvened for a new day and posits that the note may simply reflect questions that occurred to one or two jurors while they were adjourned for the night.

government, any rational trier of fact could have found the existence of the aggravating circumstance beyond a reasonable doubt." *United States v. Bernard*, 299 F.3d 467, 481 (5th Cir. 2002).

As indicated by the statute, a murder may be especially heinous, cruel, or depraved if it involves either torture or serious physical abuse. The jury's verdict form, however, only mentioned serious physical abuse and omitted any reference to torture. Therefore, the question for us reduces to whether there was sufficient evidence of heinousness, cruelty, or depravity in the context of serious physical abuse.

For serious physical abuse to be aggravating in a murder case, a defendant must inflict suffering or mutilation above and beyond that necessary to cause death. *See United States v. Hall*, 152 F.3d 381, 414-15 (5th Cir. 1998), *abrogated on other grounds by United States v. Martinez-Salazar*, 528 U.S. 304, 310 (2000) (approving a jury instruction which so provided). Furthermore, a defendant must intend such gratuitous violence for the murder to involve serious physical abuse. *See id.* (approving an instruction which provided that "the defendant must have specifically intended the abuse apart from the killing"); *United States v. Webster*, 162 F.3d 308, 324 (5th Cir. 1998) (stating that the "especially heinous, cruel, and depraved" factor focuses on the defendant's "actions and intent").

In this case, a rational jury could find beyond a reasonable

doubt that Agofsky intended to inflict (and in fact inflicted) more abuse than necessary to cause Plant's death. Agofsky's attack involved continued stomping of Plant's face and neck. The jurors heard eyewitness testimony that Agofsky stomped Plant's head and neck into the concrete "around 11" times. A medical examiner later confirmed that Plant's injuries were the result of "repeated blows." Furthermore, the corrections officer who witnessed the end of the assault testified that Agofsky continued stomping Plant even after Plant lost consciousness. While Agofsky delivered his final blows, Plant did not put his hands up to defend himself; rather, he was "just . . . laying down face up on his back on the ground." *Cf. United States v. Robinson*, 367 U.S. 278, 289 n.18 (5th Cir. 2004) ("[T]he evidence that Robinson riddled Reyes's body with bullets after he was on the ground provides probable cause to believe that the murder was committed in an especially heinous, cruel, or depraved manner . . . .").

The assault was so violent that it splattered Plant's blood and other bodily fluids on the floor and wall of the exercise area. Medical evidence adduced at trial revealed that Plant suffered the following injuries: a crushed neck (i.e., numerous broken neck bones), large abrasions on the back of his head, hemorrhaging around both eyes, a broken nose, a large bruise across his nose, abrasions and lacerations around his mouth, a broken jaw, one lost tooth, three other broken teeth, cheek abrasions, and internal

11

bleeding into his trachea, lungs, esophagus, and stomach. Based on the evidence above, the jury rationally could have found that Agofsky intended to inflict, and did inflict, greater suffering or mutiliation than necessary to cause death.

Agofsky makes two main arguments in opposition to this conclusion. He points to Government testimony that the entire assault lasted only a matter of seconds. He also represents that he voluntarily stopped the assault while Plant was still alive (though apparently already brain dead). Agofsky argues that these two circumstances belie an intent to cause needless injury or mutilation beyond that required to kill. These arguments cannot surmount the high standard-of-review hurdle on appeal. First, violence need not be protracted to be gratuitous. *See United States v. Chanthadara*, 230 F.3d 1237, 1262 (10th Cir. 2000) (holding that a murder victim could be tortured within the meaning of the Federal Death Penalty Act without being subjected to prolonged harm). Thus, a rational jury could have rejected Agofsky's time-line inference and found that he inflicted serious physical abuse despite the brevity of the attack. Second, the jury rationally could have found that Agofsky ceased the attack only after delivering abuse over and above that necessary to cause death. For the reasons above, Agofsky's challenge to the jury's aggravating-factor finding fails.

**D.    INCONSISTENT VERDICTS**

Finally, we find no merit in Agofsky's argument that his conviction or sentence for Federal Murder is invalid because the jury may have rendered inconsistent verdicts as between the guilt and punishment phases on that count.  *See Dunn v. United States*, 284 U.S. 390 (1932); *United States v. Powell*, 469 U.S. 57, 69 (1984) ("The rule [permitting inconsistent verdicts] established in *Dunn v. United States* has stood without exception . . . .")[4]

### III.    CONCLUSION

Accordingly, we VACATE Agofsky's convictions to prevent double jeopardy.  *See Goff*, 847 F.2d at 179.  We REMAND to the district court WITH INSTRUCTIONS to impose, at the Government's election, a guilty verdict and death sentence for either Federal Murder or Murder by a Federal Prisoner.  *See id*; *Narviz-Guerra*, 148 F.3d at 534.

---

[4] Agofsky asserts additional claims solely to preserve them for further review.  Inasmuch as Agofsky concedes that these claims are foreclosed by precedent binding on this Court, we do not address them.

13