MARCIA A. CRONE, UNITED STATES DISTRICT JUDGE
Pending before the court is Defendant Ricky Allen Fackrell's ("Fackrell") Motion to Strike Unconstitutional Aggravating Factors and Allegations from Government's Intent to Seek Death (Doc. No. 215), wherein Fackrell requests that the court strike various statutory and non-statutory aggravating factors from the Government's Amended Notice of Intent to Seek the Death Penalty (Doc. No. 53) and exclude all evidence proffered by the Government at the penalty phase related to those aggravators. Specifically, Fackrell challenges the following aggravating factors: (a) heinous, cruel, or depraved manner of committing the offense, 18 U.S.C. § 3592(c)(6) ; (b) substantial planning and premeditation, itation index="1" url="https://cite.case.law/citations/?q=18%20U.S.C.%20%C2%A7%203592">id. § 3592(c)(9) ; (c) vulnerability of the victim, id. § 3592(c)(11) ; and (d) lack of remorse and membership in a racist gang-two sub-factors of future dangerousness. Having considered the motion, the response of the Government, the pleadings, and the applicable law, the court is of the opinion that Fackrell's motion should be granted in part and denied in part.
I. Background
On June 2, 2016, a grand jury returned a two-count superseding indictment charging Fackrell and his co-defendant, inmates of the United States Penitentiary in Beaumont, Texas, with: (1) the unlawful killing of a fellow inmate, Leo Johns ("Johns"), with premeditation and malice aforethought, in violation of 18 U.S.C. §§ 1111, 1112 ("Count One") and (2) conspiracy to kill Johns with premeditation and malice aforethought, in violation of 18 U.S.C. § 1117 ("Count Two").[1] See Doc. No. 47. The maximum penalty if convicted of Count One is death. Voir dire in this case is currently set to begin March 5, 2018, followed by trial on April 9, 2018. See Doc. No. 77.
II. Analysis
A. Heinous, Cruel, or Depraved Manner of Committing the Offense
Fackrell avers that the statutory aggravating factor of "heinous, cruel, or depraved manner of committing the offense" is facially unconstitutional because it is vague and overbroad. Doc. No. 215, at 2-5. This aggravating factor exists where: "The defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim." 18 U.S.C. § 3592(c)(6). Specifically, Fackrell *1013 contends that the requirement that the killing "involve[ ] torture or serious physical abuse" is insufficiently limiting, as "a finding of 'torture' is not required" and "[e]very murder by definition involves 'serious physical abuse'-the killing of a human being." Doc. No. 215, at 2. The court, however, is unpersuaded.
The United States Court of Appeals for the Fifth Circuit has repeatedly denied identical challenges to § 3592(c)(6). See, e.g. , United States v. Bourgeois , 423 F.3d 501, 511 (5th Cir. 2005) (rejecting the defendant's argument that § 3592(c)(6) is overbroad and vague, noting that "[the Fifth Circuit] ha[s] consistently upheld [this factor] against such attacks ... because the factor indisputably narrows the class of murderers who are eligible for the death penalty and is sufficiently specific to pass constitutional muster"), cert. denied , 547 U.S. 1132, 126 S.Ct. 2020, 164 L.Ed.2d 786 (2006) ; United States v. Jones , 132 F.3d 232, 249-50 (5th Cir. 1998), aff'd on other grounds , 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). Given this binding precedent, the court finds that Fackrell's claim is foreclosed.
Moreover, Fackrell mistakenly contends that "serious physical abuse" is satisfied solely by the killing of a human being and, consequently, is insufficiently limiting, as every murder necessarily involves the death of another. "For serious physical abuse to be aggravating in a murder case, a defendant must inflict suffering or mutilation above and beyond that necessary to cause death " and "must intend such gratuitous violence." United States v. Agofsky , 458 F.3d 369, 374 (5th Cir. 2006) (emphasis added), cert. denied , 549 U.S. 1182, 127 S.Ct. 1149, 166 L.Ed.2d 998 (2007) ; see United States v. Ebron , 683 F.3d 105, 151 (5th Cir. 2012), cert. denied , 571 U.S. 989, 134 S.Ct. 512, 187 L.Ed.2d 365 (2013) ; see also United States v. Snarr , 704 F.3d 368, 393-94 (5th Cir. 2013) (finding that "a rational juror could have concluded that [the] Defendants intended to inflict, and in fact did inflict, greater abuse than that necessary to cause [the victim]'s death," thus qualifying as "serious physical abuse," where the victim was stabbed fifty times), cert. denied , 571 U.S. 1195, 134 S.Ct. 1273, 188 L.Ed.2d 296 (2014). Accordingly, the requirement of serious physical abuse serves its limiting purpose.
B. Substantial Planning and Premeditation
Fackrell claims that the statutory aggravating factor of "substantial planning and premeditation" is facially unconstitutional because it is overbroad. Doc. No. 215, at 5-11. This aggravating factor exists where: "The defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism." 18 U.S.C. § 3592(c)(9). Specifically, Fackrell maintains three arguments: (1) evidence of planning and premeditation does not narrow the class of defendants eligible for the death penalty because "almost every murder involves some planning and premeditation;" (2) the qualifier of "substantial" is unconstitutionally vague; and (3) federal courts have failed to construct a definition of substantial that is both specific and limiting. Doc. No. 215, at 5. The court, however, disagrees.
The Fifth Circuit has consistently rejected the argument advanced by Fackrell, upholding the constitutional validity of § 3592(c)(9) against attacks alleging vagueness and overbreadth. See Bourgeois , 423 F.3d at 511 (rejecting the defendant's argument that § 3592(c)(9) was unconstitutionally vague and overbroad because the factor "obviously narrow[s] the class of murderers who could be eligible for the death penalty");
*1014 United States v. Webster , 162 F.3d 308, 345 n.70 (5th Cir. 1998) (noting that challenges to § 3592(c)(9) premised on vagueness have been "foreclosed by [the Fifth Circuit's] analysis of the same language in the analogous 21 U.S.C. § 848(e) death penalty scheme" (citing United States v. Flores , 63 F.3d 1342, 1373-74 (5th Cir. 1995) ) ), cert. denied , 528 U.S. 829, 120 S.Ct. 83, 145 L.Ed.2d 70 (1999). Substantial, as used within the substantial planning and premeditation aggravating factor, "denote[s] a thing of high magnitude," and "the term alone, without further explanation, [is] sufficient to convey that meaning and to enable the jury to make an objective assessment." United States v. Davis , 609 F.3d 663, 689-90 (5th Cir. 2010) (quoting Flores , 63 F.3d at 1373-74 ) (noting the Fifth Circuit's rejection of the argument "that the term 'substantial' is vague because it is subjective and has different meanings"), cert. denied , 562 U.S. 1290, 131 S.Ct. 1676, 179 L.Ed.2d 621 (2011).
Further, Fackrell's assertion that this aggravating factor should be struck because the jury may misinterpret or misapply "substantial" is unpersuasive. The court declines Fackrell's invitation to doubt the integrity or intelligence of the jurors that are to serve in this case. The jury will receive appropriate instructions regarding the proper manner in which to consider and evaluate all the evidence. Id. (approving of jury instructions that stated "[t]he words 'substantial planning' should be given their ordinary, everyday meaning" and that " '[s]ubstantial' planning requires a considerable amount of planning preceding the killing"). Thus, the court finds that Fackrell's claim is meritless.
C. Vulnerability of Victim
Fackrell asserts that, based on the Government's allegations, Johns does not qualify as vulnerable pursuant to the "vulnerability of victim" statutory aggravating factor, which states, in full, that: "The victim was particularly vulnerable due to old age, youth, or infirmity." 18 U.S.C. § 3592(c)(11). In the Government's Amended Notice of Intent to Seek the Death Penalty (Doc. No. 53), it contends that: "[Johns] was particularly vulnerable due to the fact that he was trapped and/or otherwise confined in a small prison cell, devoid of any means with which to defend himself from the armed defendant." Fackrell maintains that "[t]he environment of the alleged offense is insufficient to distinguish the charged offense from any other murder." Doc. No. 215, at 13. While the court is unconvinced that the environment of the instant killing is insufficiently limiting from other murders, the fact that Johns died in a prison cell outside the view of the guards and without access to a weapon does not make him a vulnerable victim according to the plain language of the statute.
The Government contends that Johns constitutes a vulnerable victim because of "the helplessness the environment and [Fackrell's] actions placed on him." Doc. No. 287, at 8. Section 3592(c)(11), however, limits vulnerability to "old age, youth, or infirmity." Johns's external environment and Fackrell's alleged placement of him in that environment clearly do not relate to old age or youth, and the ordinary meaning of infirmity cannot be stretched in such a manner to encompass the Government's allegations. The American Heritage Dictionary of the English Language (Fifth Edition) defines infirmity in four slightly differing ways-none of which would include Johns's location in a prison cell obstructed from the view of the guards and Fackrell's alleged actions in securing that opportune placement:
[ (1) ] The condition of being infirm, often as associated with old age; weakness or frailty: the infirmity brought on by *1015 the disease [;] [ (2) ] A bodily ailment or weakness: complained about his infirmities [;] [ (3) ] Weakness of resolution or character: the infirmity inherent in human nature [;] [ (4) ] A moral failing or defect in character: the infirmities and depravities of corrupt nobles.
See White v. Immigration & Naturalization Serv. , 75 F.3d 213, 215 (5th Cir. 1996) ("In determining a statute's plain meaning, we assume that 'Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning.' " (quoting Pioneer Inv. Servs. v. Brunswick Assocs. , 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ) ).
The Government relies on United States v. Lambright , 320 F.3d 517 (5th Cir. 2003), to support its position. Not only did Lambright involve a prison guard assaulting an inmate, which presents a disparate power dynamic that raises vastly different vulnerability concerns from the instant, alleged inmate-on-inmate violence, it also concerned who constitutes a vulnerable victim under the United States Federal Sentencing Guidelines (the "U.S.S.G."). Id. at 518-19. The definition of a vulnerable victim in the U.S.S.G. differs significantly from that set forth in § 3592(c)(11), for, in addition to "age, physical or mental condition," a victim is "unusually vulnerable" under U.S.S.G. § 3A1.1(b)(1) if he or she "is otherwise particularly susceptible to the criminal conduct." There is no such catch-all in § 3592(c)(11), and the court will not, and indeed, cannot, re-write the statute so as to create one. See Carcieri v. Salazar , 555 U.S. 379, 387, 129 S.Ct. 1058, 172 L.Ed.2d 791 (2009) ("The case requires us to apply settled principles of statutory construction under which we must first determine whether the statutory text is plain and unambiguous. If it is, we must apply the statute according to its terms." (citation omitted) ); United States v. Ron Pair Enters., Inc. , 489 U.S. 235, 240-41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("[T]here generally is no need for a court to inquire beyond the plain language of the statute."). Thus, because the Government does not allege that Johns was "particularly vulnerable due to old age, youth, or infirmity," the vulnerability of victim statutory aggravating factor must be struck from the Government's notice and the Government cannot introduce evidence that characterizes Johns as a vulnerable victim.
D. Future Dangerousness
Fackrell challenges two sub-factors of the future dangerousness non-statutory aggravating factor, arguing that "lack of remorse" and "membership in racist prison gangs" do not withstand constitutional scrutiny. Doc. No. 215, at 11-13. Specifically, Fackrell asserts that: (1) the Government's allegation of lack of remorse violates Fackrell's Fifth Amendment and federal statutory right against self-incrimination because it undercuts the presumption of innocence and his right to remain silent; and (2) the Government's allegation of Fackrell's membership in Soldiers of Aryan Culture ("SAC"), a white-supremacy prison gang, violates his First Amendment association right. Id. at 12-13.
1. Lack of Remorse
"A defendant's lack of remorse has ... been construed as evidence of future dangerousness." See Hodges v. Epps , 648 F.3d 283, 289 (5th Cir. 2011) ; United States v. Davis , 912 F.Supp. 938, 946 (E.D. La. 1996) (approving of the Government's use of the defendant's alleged exultation as indicative of his lack of remorse and, as such, information probative of the defendant's future dangerousness); see also United States v. Coonce , No. 10-3029-01, 2014 WL 1018081, at *13 (W.D. Mo. Mar. 14, 2014) ("[A]s to the inclusion of lack of remorse as a non-statutory aggravating *1016 circumstance-whether as a free-standing allegation or as a component of another allegation-federal courts have recognized that a defendant's supposed lack of remorse is relevant information for a jury to consider in assessing the possible application of the death penalty."); United States v. Stone , No. 12-0072, 2013 WL 6799119, at *6 (E.D. Cal. Dec. 20, 2013) (upholding lack of remorse as a sub-factor of future dangerousness); United States v. Umana , 707 F.Supp.2d 621, 636 (W.D.N.C. 2010) ("There is nothing per se unconstitutional about considering a defendant's lack of remorse as a characteristic that favors imposition of the death penalty." (citing Zant v. Stephens , 462 U.S. 862, 885 n.22, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) ) ); United States v. Edelin , 134 F.Supp.2d 59, 79-80 (D.D.C. 2001) ("Federal courts have specifically upheld the use of lack of remorse to support a finding of future dangerousness.").
The Fifth Amendment, nevertheless, may limit proof of lack of remorse to affirmative words or conduct expressed by the defendant. See Esquivel v. Smith , No. 1:11-CV-00030, 2013 WL 4433691, at *15 (D. Idaho Aug. 16, 2013) ("[T]he circuit courts are divided over whether the Fifth Amendment prohibits using silence to show lack of remorse inviting a harsher sentence."). Compare United States v. Caro , 597 F.3d 608, 627 (4th Cir. 2010) (holding that during a capital sentencing, a defendant's silence cannot be considered as proof of his lack of remorse but his "affirmative words or conduct" can), cert. denied , 565 U.S. 1110, 132 S.Ct. 996, 181 L.Ed.2d 732 (2012), with Burr v. Pollard , 546 F.3d 828, 832 (7th Cir. 2008) (holding that "silence can be consistent not only with exercising one's constitutional right, but also with a lack of remorse[:] The latter is properly considered at sentencing because it speaks to traditional penological interests such as rehabilitation ... and deterrence"), cert. denied , 555 U.S. 1175, 129 S.Ct. 1382, 173 L.Ed.2d 592 (2009). The court, however, does not have to consider the issue of whether, at the penalty phase of a capital proceeding, silence can be indicative of Fackrell's lack of remorse. Here, the Government states that: "Fackrell has demonstrated a lack of remorse for the capital offenses committed in this case, as indicated by the defendant's statements and actions during the course of and following the offenses alleged in the Indictment." Doc. No. 53, at 4 ¶ (c) (emphasis added). In its response, the Government confirms that its evidence on the lack of remorse sub-factor will be limited to "[Fackrell]'s affirmative statements and actions." Doc. No. 287, at 6. Thus, the court will not strike lack of remorse from the Government's notice.
2. Membership in a Racist Gang
"[T]he Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." Dawson v. Delaware , 503 U.S. 159, 165, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). Indeed, the Supreme Court of the United States has "upheld the consideration ... of evidence of racial intolerance and subversive advocacy where such evidence was relevant to the issues involved" in both capital and non-capital sentencing proceedings. Id. at 164, 112 S.Ct. 1093 ; see United States v. Abel , 469 U.S. 45, 49, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (holding that the Government could impeach a defense witness by showing that both the defendant and the witness were members of the Aryan Brotherhood ("AB") and that members were sworn to lie on behalf of each other); Barclay v. Florida , 463 U.S. 939, 948-49, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (holding that a sentencing judge in a capital case may *1017 consider "the elements of racial hatred" in the defendant's crime as well as "[the defendant]'s desire to start a race war"). Nevertheless, in Dawson , the Court held that where both parties stipulated to the defendant's membership in the AB prison gang, but the prosecution offered no evidence of the gang's violent tendencies relevant to sentencing, the use of that associational evidence violated the defendant's First Amendment rights. 503 U.S. at 165, 112 S.Ct. 1093. The Dawson Court, however, qualified its holding with an important caveat:
Because the prosecution did not prove that the [AB] had committed any unlawful or violent acts, or had even endorsed such acts, the [AB] evidence was ... not relevant to help prove any aggravating circumstance. In many cases, for example, associational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society. A defendant's membership in an organization that endorses the killing of any identifiable group, for example, might be relevant to a jury's inquiry into whether the defendant will be dangerous in the future.
Id. at 166, 112 S.Ct. 1093.
The Fifth Circuit considered the implications of Dawson in Fuller v. Johnson , 114 F.3d 491 (5th Cir.), cert. denied , 522 U.S. 963, 118 S.Ct. 399, 139 L.Ed.2d 312 (1997). At the punishment phase of the capital proceeding, the State introduced evidence as to the defendant's future dangerousness, including evidence that the defendant belonged to the AB. Unlike Dawson , the evidence the State presented established that the AB "was a white supremacist, neo-nazi-type gang that routinely dealt in violence, drug dealing, protection rackets, prostitution, and fear." Id. at 497. The Fifth Circuit found this distinction significant and, accordingly, upheld the admission of such evidence, stating that:
A reasonable juror could conclude that membership in [the AB] is relevant to future dangerousness. Dawson established that a state may not employ a defendant's abstract beliefs at a sentencing hearing when those beliefs are not relevant to the issue being tried. In this case, however, Texas did not violate [the defendant]'s First Amendment rights because it introduced relevant evidence of his future dangerousness. The fact that [the defendant] was within his rights in joining the gang does not bar the use of relevant evidence at trial.
Id. at 498.
Here, the Government states that it intends to offer proof of "the violent nature of SAC as well as Fackrell's participation in violent gang-related act(s) such as the murder of [Johns], which was committed because Johns, a SAC member, failed to comply with the orders of superior SAC members." Doc. No. 287, at 7. This evidence falls squarely within that approved by Dawson and Fuller . Not only is it directly relevant to the death of Johns, but it tends to show Fackrell's potential for future dangerousness, as the Government submits that SAC endorses the killing of members perceived to be disobedient, among other unlawful and violent acts. Accordingly, although the First Amendment places restrictions on admissible evidence concerning Fackrell's membership in SAC, it does not require the court to strike this sub-factor from the Government's notice.
III. Conclusion
Consistent with the foregoing analysis, Fackrell's Motion to Strike Unconstitutional Aggravating Factors and Allegations from Government's Intent to Seek Death *1018 (Doc. No. 215) is GRANTED IN PART and DENIED IN PART.

The Government contends that Defendants stabbed Johns more than sixty times.