IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 31, 2008

Charles R. Fulbruge III
Clerk

No. 07-40330

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

SHANNON WAYNE AGOFSKY,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Texas
No. 1:03-CR-0173

Before GARZA, STEWART, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

In this direct criminal appeal, Shannon Wayne Agofsky challenges the district court's final judgment imposing a sentence of death. Because Agofsky's arguments were previously addressed by a panel of this court and that panel's decision was not clearly erroneous, we affirm.

I

As the previous panel noted, the evidence adduced at trial showed that Agofsky murdered Luther Plant, an inmate incarcerated with Agofsky at the

federal penitentiary in Beaumont, Texas.[1] Agofsky killed Plant by striking him and then repeatedly stomping his head and neck after he fell to the concrete floor.

The Government charged Agofsky with two counts of capital murder. Count I of the indictment charged Agofsky with premeditated murder by a federal prisoner serving a term of life imprisonment, a violation of 18 U.S.C. §§ 1118, 1111 (2000 & 2003 Supp.) ("Murder by a Federal Prisoner"). Count II of the indictment charged Agofsky with premeditated, first degree federal murder, a violation of 18 U.S.C. § 1111 (2000 & 2003 Supp.) ("Federal Murder"). Count II of the superseding indictment and the district court's jury instructions, which followed this court's pattern instructions, required jurors to find that Agofsky killed Luther Plant in a "willful," "deliberate," "malicious," and "premeditated" manner.[2] The superceding indictment also alleged the four statutory elements found in 18 U.S.C. § 3591(a)(2) with respect to both counts.[3] The jury convicted on both counts.

During the sentencing phase, the Government presented evidence that Agofsky had been convicted of a prior murder. During or fleeing from an armed

---

[1] United States v. Agofsky, 458 F.3d 369, 371 (5th Cir. 2006), cert. denied, 127 S.Ct. 1149 (2007).

[2] See Fifth Circuit Pattern Jury Instructions, § 2.55, Murder (First–Degree) ("A killing is 'premeditated' when it is the result of planning or deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent.").

[3] 18 U.S.C. § 3591(a)(2) (directing the imposition of a death sentence if, after consideration of the factors set forth in § 3592, there is a determination beyond a reasonable doubt that the defendant: "(A) intentionally killed the victim; (B) intentionally inflicted serious bodily injury that resulted in the death of the victim; (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.").

robbery of a bank, Agofsky killed its president by tying him to a chair and throwing him into a lake. The Government's evidence also showed that Agofsky had engaged in serious misconduct while in prison. The jury found several statutory and non-statutory aggravating factors, including that the murder of Plant was especially heinous, cruel, or depraved. Specifically, the jury found that Agofsky (1) intentionally inflicted serious bodily injury that resulted in the death of Plant; (2) intentionally participated in an act "contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person" resulting in death; and (3) "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person," such that participation in the act constituted a reckless disregard for human life and Plant died as a direct result of the act. However, the jury answered "no" to the following question: "Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, intentionally killed the victim, Luther Plant?" After consideration of mitigating factors, the jury found that a death sentence was warranted for each count of conviction.

Agofsky challenged his convictions on a variety of grounds in a previous appeal to this court, including that the jury's special finding that he did not commit the Plant murder "intentionally" is inconsistent with the jury's verdict of guilt on Count II. In a published opinion, the prior panel vacated the dual convictions, concluding they violated Agofsky's right to be free from double jeopardy, but rejected Agofsky's inconsistent verdicts argument.[4] The panel remanded to the district court with instructions "to impose, at the Government's election, a guilty verdict and death sentence for either Federal Murder or

---

[4] Agofsky, 458 F.3d at 371-75.

Murder by a Federal Prisoner."[5]  The Government elected to proceed  on Count II—Federal Murder.  The district court sentenced Agofsky to death for Count II.

Agofsky timely appealed from that judgment and sentence again arguing that the jury's special finding is inconsistent with the jury's verdict of guilt on Count II.

II

Generally, the law of the case doctrine precludes reexamination by the appellate court on a subsequent appeal of an issue of law or fact decided on a previous appeal.[6]  "Without this doctrine, cases would end only when obstinate litigants tire of re-asserting the same arguments over and over again."[7] Additionally, it discourages litigants from filing subsequent appeals in hopes of obtaining a more sympathetic panel.[8]

However, the law of the case doctrine is a discretionary rule.[9]  This court has recognized three exceptions to it: "(1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice."[10]

Agofsky does not argue any newly discovered evidence or an intervening change of law.[11]  Instead, he argues that the earlier panel's decision is clearly

---

[5] Id. at 375.

[6] United States v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002) (citing Tollett v. City of Kemah, 285 F.3d 357, 363 (5th Cir. 2002) (citation omitted)).

[7] Id.

[8] United States v. Becerra, 155 F.3d 740, 752 (5th Cir. 1998), abrogation on other grounds recognized, United States v. Farias, 481 F.3d 289, 291-92 (5th Cir. 2007).

[9] Messinger v. Anderson, 225 U.S. 436, 444 (1912).

[10] Matthews, 312 F.3d at 657 (citing Becerra, 155 F.3d at 752-53).

[11] Appellant's Br. 11.

erroneous and would work a manifest injustice in his case.[12]  Accordingly, our review is to determine whether the prior panel's decision was clearly erroneous and if so, whether that error would result in a manifest injustice.

In Agofsky's first appeal, the panel found "no merit in Agofsky's argument that his conviction or sentence for Federal Murder is invalid because the jury may have rendered inconsistent verdicts as between the guilt and punishment phases on that count."[13]  In Dunn v. United States, the Supreme Court declined to review a conviction where the defendant argued that the count for which he was convicted was inconsistent with his acquittal on the other counts in his indictment even though the evidence was the same for all the counts.[14]  The Supreme Court held that consistency in verdicts is not necessary, writing that it "is possible" that "the verdict may have been the result of compromise, or of a mistake on the part of the jury . . . . But verdicts cannot be upset by speculation or inquiry into such matters."[15]  In United States v. Powell, the Supreme Court affirmed the Dunn rule and criticized courts of appeal for carving out various exceptions to it.[16]

Agofsky argues that Dunn does not apply when there is a significant contradiction between a jury's general verdict and its special verdict regarding the same count.  Agofsky cites Pipefitters Local Union No. 562 v. United States, arguing that the remedy for such an occurrence is a new trial.[17]  We disagree.

---

[12] Id.

[13] Agofsky, 458 F.3d at 375. (citing Dunn v. United States, 284 U.S. 390 (1932) and United States v. Powell, 469 U.S. 57, 69 (1984) ("The rule [permitting inconsistent verdicts] established in Dunn v. United States has stood without exception . . . .")).

[14] Id. at 391-92.

[15] Dunn, 284 U.S. at 394.

[16] Powell, 469 U.S. at 63-69.

[17] 407 U.S. 385 (1972).

In Pipefitters, a union and three of its officials were convicted under 18 U.S.C. § 371 for conspiracy to violate 18 U.S.C. § 610, which at the time was a felony "if the violation was willful."[18] Accordingly, the issue of willfulness was submitted to the jury, which found that the violations of § 610 were not "willful."[19] In rejecting the defendants' argument that the jury's special finding effectively resulted in acquittal, the Supreme Court observed that "even assuming, arguendo, the correctness of petitioners' premise that knowledge of the reach of § 610 was a requisite for conviction . . . petitioners [defendants] would still be entitled at best to a new trial, not acquittal."[20] However, the case was not decided on this basis. The Supreme Court ultimately reversed because the jury instructions contained an interpretation of § 610 that was plainly erroneous since they "clearly permitted the jury to convict without a finding that donations to the Pipefitters fund had been actual or effective dues or assessments."[21]

Moreover, Pipefitters does not discuss the issue of reviewability, which the Supreme Court directly addressed both prior to Pipefitters in Dunn and subsequent to Pipefitters in Powell. As the Supreme Court noted in Powell, inconsistent verdicts present "'error,' in the sense that the jury has not followed the court's instructions . . . but it is unclear whose ox has been gored."[22] Because of "this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course."[23] The court

---

[18] Id. at 387.

[19] Id. at 395-97.

[20] Id. at 400 n.11 (citations omitted).

[21] Id. at 442.

[22] United States v. Powell, 469 U.S. 57, 65 (1984).

[23] Id.

reasoned, "the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest."[24]  Moreover, "[t]his possibility is a premise of Dunn's alternative rationale—that such inconsistencies often are a product of jury leniency."[25]  Accordingly, "[t]he fact that the inconsistency may be the result of leniency, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable."[26]

Lastly, Agofsky argues that a significant contradiction between a jury's general verdict and its answers to the special interrogatories submitted during the sentencing phase should result in a reversal of a death sentence under 18 U.S.C. § 3595(c)(1) & (c)(2)(A).  Agofsky cites the Seventh Circuit's discussion in United States v. Johnson for the proposition that if inconsistencies indicated jury irrationality, the death sentence would have to be set aside under 18 U.S.C. § 3595(c)(2)(A).[27]  In Johnson, the court, citing Powell, rejected a defendant's argument that because the jury rendered inconsistent verdicts as to certain mitigating factors, the defendant was entitled to vacatur of his death sentence.[28] The Seventh Circuit examined special findings regarding mitigation factors to

---

[24] Id.

[25] Id.

[26] Id. at 66.

[27] 223 F.3d 665, 676 (7th Cir. 2000) ("Of course, if the inconsistencies were such as to indicate that the verdict was a product of irrationality, it would have to be set aside.  The death penalty statute is explicit about this.").

[28] Id. at 675-76, (citing Powell, 469 U.S. at 64-69) ("[I]f a juror couldn't make up his mind whether the defendant had proved 2 mitigating factors or 10 mitigating factors, but was clear in his mind that even in the latter event the aggravating factors outweighed them, there would be no basis for thinking that he had voted irrationally." (citing Wainwright v. Lockhart, 80 F.3d 1226, 1231-32 (8th Cir. 1996))).

ensure that the jury was not irrational and concluded it was not.[29]   In the present case, we see nothing irrational about the jury's findings.   We cannot conclude that the previous panel clearly erred in rejecting Agofksy's argument. Accordingly, we do not find manifest injustice.

*  *  *

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[29] Id. at 676.