COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-13-00279-CR |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 409th Judicial District Court |
| | § | |
| LUIS RAMOS, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 20110D01868) |
| | § | |

## OPINION ON MOTION FOR REHEARING

Luis Ramos has moved for rehearing of this Court's previous decision dated July 15, 2015. His motion for rehearing is granted. We withdraw the opinion and judgment issued July 15, 2015, and substitute the following opinion and judgment.

The State of Texas seeks reversal of an order granting a new trial to Luis Ramos, who was acquitted of murder but convicted of aggravated assault by threat arising out of a stabbing incident. Ramos' only defense at trial was self-defense. In one issue, the State contends that rendition of these apparently inconsistent verdicts is not proof that the jury believed Ramos' self-defense claim, and that contrary to Ramos' assertions, verdict inconsistency alone does not justify acquittal or a new trial grant on the aggravated assault charge when the evidence underpinning that charge was legally sufficient. We agree.

1

However, on rehearing, Ramos correctly noted that the trial court improperly granted the State's request for a "lesser-included offense" instruction on aggravated assault by threat when, in fact, aggravated assault by threat is not a lesser-included offense of murder. *See Hall v. State*, 225 S.W.3d 524, 536-37 (Tex.Crim.App. 2007)(noting that the threat element renders this type of aggravated assault a separate offense from those in the murder spectrum under the cognate-pleadings jeopardy rule). The State conceded that the trial court violated Ramos' due process rights by allowing him to be convicted of an unindicted lesser-but-not-included offense. *See Beasley v. State*, 426 S.W.3d 140, 149 (Tex.App.--Houston [1st Dist.] 2012, no pet.). Because jury charge error could have justified the lower court's decision, we affirm the trial court's new trial order with respect to the aggravated assault charge and reform the judgment to reflect an acquittal on the murder count.

## BACKGROUND

### Factual History

On November 20, 2009, Ramos, his wife Jessica, their children, and Ramos' friend Manny Rodriguez attended a party hosted by Jessica's friend Fernanda Anguiano at her home on 5012 Sagittarius Avenue in Northeast El Paso. Anguiano's then-boyfriend Samuel Reynosa was also present at the house with his cousin Angel Garcia and his brothers Jose "Tudie" Reynosa and Adrian Reynosa.

Samuel Reynosa testified that about fifteen people showed up to the party. He admitted to smoking marijuana and drinking alcohol with others at the get-together. About an hour after the Ramos' arrival, Samuel and Anguiano began asking people to leave because Fernanda had been drinking and felt bad. Samuel then left to pick up items at a nearby 7–11. He testified that as he entered the house while Ramos was leaving, he told Ramos to watch out. Ramos accused

2

Samuel of trying to "punk him." Ramos' friend Manuel Rodriguez testified that Samuel had pushed Ramos as he passed and swore at him, and that Ramos sarcastically replied "excuse me." Rodriguez further testified that exchange prompted expletive responses from Samuel and Adrian, with Adrian throwing a punch at Rodriguez. Adrian Reynosa testified that Manny Rodriguez threw the first punch after the argument started, striking him in the jaw. This exchange between Adrian Reynosa and Manny Rodriguez set off a fistfight with the Reynosa brothers and Garcia on one side and Ramos and Rodriguez on the other. Garcia and Adrian Reynosa fought Manny Rodriguez, and Samuel and Jose Reynosa fought Ramos. During this fight, no one used any weapons.

The fight briefly died down, but within a short period of time, a second fight broke out in the street outside the yard. The evidence is disputed as to who started the second fight. Samuel Reynosa testified that Ramos started the fight by punching him above the left eye as Samuel tried to shepherd everyone back toward the house. Ramos' wife Jessica testified that one of the Reynosas started the second fight by hitting Rodriguez.

The evidence is also disputed as to whether Ramos was the only person carrying a knife or a weapon. Jessica Ramos maintained at trial that she saw Samuel Reynosa swinging a knife at her husband during the fight. Samuel Reynosa testified that he did not grab a steak knife until after the fight had finished, and that all he did with it was throw it at Ramos' truck as he fled after the fight. Manuel Rodriguez testified that Angel Garcia also had a kitchen knife as he moved toward Ramos. Adrian Reynosa admitted that he was carrying a blue Azteca vodka bottle when he came back from the store and the first fight started, but denied using it as a weapon. He also testified he only threw another bottle with a yellow cap at Ramos' truck. Rodriguez stated that Adrian Reynosa used a bottle to hit Ramos during the second fight. Samuel Reynosa

3

initially testified that it was Rodriguez who broke a bottle and used it as a weapon, but admitted on cross-examination that he had not seen either Ramos or Rodriguez use a bottle as a weapon.

Adrian Reynosa testified that as the second fight got underway, three men pushed Ramos away from his truck and his family and into the intersection. Adrian attacked Ramos when he saw Ramos moving behind the truck toward Garcia. Ramos struck Adrian, who fell. Eventually, Ramos and Garcia were the only two combatants left fighting in the street.

Samuel Reynosa testified that as Ramos and Garcia fought, Ramos swung an object in his hand twice at Garcia. Garcia then ran toward Samuel, bleeding from his neck and saying that he had been stabbed. Adrian and Jose Reynosa confirmed that they saw Garcia had been stabbed after fighting one-on-one with Ramos. Jessica Ramos testified that as soon as the fight ended, her husband ran in the house to get their child, buckled her into her seat in the truck, and they all returned back to their apartment. Police later found the knife used in the stabbing at Ramos' apartment.

Garcia died of a transectional cut across the trachea. El Paso County Chief Medical Examiner Dr. Juan Contin testified that a toxicology screening showed a .145 blood-alcohol concentration and marijuana metabolites in Garcia's blood, with another screening done at William Beaumont Army Medical Center showing a blood-alcohol concentration of .21.

## Procedural History

The State indicted Ramos on one count of murder. Ramos requested and received jury instructions on the law of self-defense, defense of third parties, and duty to retreat. Before the trial court submitted the case to the jury, the State also received, over objection, a lesser-included offense instruction on aggravated assault by threat.

The jury returned verdicts of not guilty on the murder count, but guilty on the aggravated

4

assault count, assessing punishment at 15 years' in prison. Ramos moved for a new trial and to arrest the verdict. *See* TEX.R.APP.P. 22.1. The trial court initially denied Ramos' request for a new trial. However, it later reconsidered its ruling *sua sponte*, granting Ramos' new trial request and entering a judgment of acquittal.[1] The State appealed.

## DISCUSSION

On original hearing, the State maintained that the trial court abused its discretion in granting a new trial when it had no legal justification for doing so. Ramos countered that the trial court could have granted a new trial or an acquittal on legal sufficiency grounds when the jury returned inconsistent verdicts that showed it believed his self-defense argument, but erroneously convicted him of aggravated assault anyway. Ramos also asserted that we could uphold the trial court's new trial grant on the basis that the lower court erred in submitting a State-requested aggravated assault by threat instruction.

On rehearing, Ramos clarified that jury charge error stemmed from the fact that aggravated assault by threat was not, in fact, a lesser-included offense. The State concedes that the particular aggravated assault instruction at issue here was erroneous. As explained below, we conclude that giving this instruction constituted reversible error, and that the new trial order could be justified as a curative measure aimed at correcting this mistake. However, Ramos is still entitled to legal sufficiency review, since a finding of legal insufficiency would interpose a jeopardy bar against retrial. *Benavidez v. State*, 323 S.W.3d 179, 182 (Tex.Crim.App. 2010). We find that Ramos was not entitled to an acquittal on the aggravated assault charge because the

---

[1] The trial court sentenced Ramos on June 28, 2013. It initially denied Ramos' motion for new trial on September 9, 2013, before rescinding its prior decision and ordering a new trial on September 11, 2013. Trial courts possess the plenary power to "rescind a prior order granting or denying a new trial for up to seventy-five days after sentencing." *State v. Barron*, No. 08–12–00245–CR, 2014 WL 505497, at \*2 (Tex.App.--El Paso Feb. 7, 2014, pet. ref'd)(not designated for publication). Here, the trial court's plenary power expired on September 12, 2013—the seventy-sixth day after sentencing.

5

evidence was legally sufficient to support it. Instead, a new trial on that charge is the appropriate remedy here.

**Standard of Review**

We review the trial court's new trial ruling for abuse of discretion. *State v. Herndon*, 215 S.W.3d 901, 906 (Tex.Crim.App. 2007). A trial judge "cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or received a raw deal." *Id.* at 907 [Internal quotation marks omitted]. Instead, even where a defendant urges a new trial on interest of justice grounds, "[a] motion for a new trial, whether for guilt or punishment, requires a valid legal claim." *State v. Thomas*, 428 S.W.3d 99, 107 (Tex.Crim.App. 2014). "To grant a new trial for a non-legal or legally invalid reason is an abuse of discretion." *Herndon*, 215 S.W.3d at 907.

The trial court must grant the defendant a new trial for any of the reasons articulated in TEX.R.APP.P. 21.3, including "when the court has misdirected the jury about the law or has committed some other material error likely to injure the defendant's rights[,]" TEX.R.APP.P. 21.3(b), or "when the verdict is contrary to the law and the evidence." TEX.R.APP.P. 21.3(h). "The trial court retains the discretionary power to grant a new trial for any legal reason not listed in TEX.R.APP.P. 21.3." *State v. Vigil*, No. 08–13–00273–CR, 2015 WL 2353507, at *3 (Tex.App.--El Paso May 15, 2015, no pet. h.)(not designated for publication). While "[t]he defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial[,] . . . trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial." *Herndon*, 215 S.W.3d at 909. The Court of Criminal Appeals has declined to set bright-line rules for the

6

appellate courts to use in assessing the trial court's exercise of discretion on a ground not enumerated in TEX.R.APP.P. 21.3, but the Court has suggested that "a trial court would not generally abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure." *Herndon*, 215 S.W.3d at 909.

**A.**

**Legal Sufficiency and "Irreconcilable" Verdicts**

In his legal sufficiency rebuttal point, Ramos asserts that the trial court could have properly rendered an acquittal because the jury returned an illogical split verdict that indicated it actually believed his self-defense claim, but improperly convicted anyway on aggravated assault. We disagree.

Ramos' defense of the new trial grant on appeal rests heavily on *Alonzo v. State*, 353 S.W.3d 778 (Tex.Crim.App. 2011). Ramos argues that Alonzo stands for the proposition that when a defendant pleads self-defense and the jury believes his self-defense claim, it cannot acquit the defendant of murder but still convict him of aggravated assault. As such, the trial court was justified in ordering a new trial here in light of inconsistent verdicts that indicated the jury believed his self-defense argument.

In *Alonzo*, the defendant was charged with murder arising out of a stabbing incident in a prison. The defendant claimed self-defense, and the jury charge included instructions on the lesser-included offenses of manslaughter and aggravated assault. *Id*. at 779-80. During deliberations, the jury, by note, asked the trial court two questions: (1) "If we find 'not guilty' of

7

count 1 murder by reason of self-defense does that preclude us from considering the 2 lesser offenses in count 1?;" and (2) "Can self-defense be applied to all 3 offenses in count 1? i.e. can 'self-defense' be used as a reason for finding 'not guilty' to the 2 lesser included offenses in count 1?" *Id*. at 780. In response, the trial court stated that if the jury believed self-defense as to the murder charge, they could still consider convicting on the lesser-included offenses of manslaughter and aggravated assault. Specifically, the trial court responded: "In response to your question: Self–Defense does apply to Murder. Self–Defense does <u>not</u> apply to Manslaughter. Self–Defense does not apply to Aggravated Assault if the jury finds the defendant committed Aggravated Assault recklessly." *Alonzo*, 353 S.W.3d 780 [Emphasis in original]. The jury convicted the defendant on manslaughter, but acquitted on murder. The Corpus Christi Court of Appeals affirmed his conviction. *Id*.

On discretionary review, the Court of Criminal Appeals held that the trial court should have instructed that jury that if it believed the defendant's self-defense claim, it should acquit him on the lesser-included offense as well, since the defendant presented a justification defense that was applicable to offenses generally, and not merely those requiring a knowing or intentional mens rea. *Id*. at 783.

Ramos correctly states the legal precept handed down in *Alonzo*: if the jury believes the defendant's self-defense argument, then his actions were justified as to both murder and aggravated assault. However, the issue here is whether Ramos' acquittal for murder indicated that the jury made an implicit finding he acted in self-defense. Ramos maintains that such a conclusion is inescapable under these facts, since his entire defense rested on admitting to the charged conduct, but arguing his actions were justified. *See Stoltz v. State*, No. 08–10–00048–CR, 2011 WL 3199337, at *4 (Tex.App.--El Paso July 27, 2011, pet. ref'd)(not designated for

8

publication); *Meadows v. State*, No. 08–05–00394–CR, 2007 WL 1651324, at *10 (Tex.App.--El Paso June 7, 2007, no pet.)(not designated for publication)(cases stating that self-defense is a justification defense predicated on a tacit admission to otherwise criminal conduct). As such, the only logical way for the jury to acquit him for murder would be to find he acted in self-defense, and that self-defense finding should have collaterally estopped an inconsistent conviction on the lesser-included offense of aggravated assault per *Alonzo*.

The State points us to a contravening line of federal authority holding that appellate courts should not read implicit special findings into conflicting, logically irreconcilable general verdicts in criminal trials and then use those implicit findings to issue-preclude acquittals on other counts. In those cases, the Supreme Court acknowledged that even where inconsistencies in a verdict suggested the jury made a mistake or engaged in "compromise," appellate courts should not overturn the jury's decision based on speculation over what the jury's general verdict truly meant. *See United States v. Agofsky*, 516 F.3d 280, 283–84 (5th Cir. 2008)(summarizing history of U.S. Supreme Court cases *Dunn v. United States*[2] and *United States v. Powell*[3] dealing with inconsistent verdicts). Instead, the appellate court should review each charge individually for legal sufficiency and affirm if the evidence supporting the charge is sufficient. *Id*. The rationale articulated for this rule is that it is impossible to speculate on whether the windfall from an inconsistent verdict helped the government or the defendant; while the jury may have thought the prosecution overreached but convicted because they thought the defendant was guilty of something, it could also be that the jury exercised lenity and the prosecution is precluded from seeking review of an erroneous acquittal. *Powell*, 468 U.S. at 65, 105 S.Ct. at 477. Inability to determine what happened in the jury room from the face of a general verdict, coupled with

---

[2] 284 U.S. 390, 391-92, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932).

[3] 469 U.S. 57, 60, 105 S.Ct. 471, 479, 83 L.Ed.2d 461 (1984).

9

evidentiary rules prohibiting inquiry into the jury's thought processes, make consistent review of inconsistent verdicts unworkable. *Powell*, 468 U.S. at 65, 105 S.Ct. at 477. Consequently, an appellate court should limit itself to reviewing the conviction standing alone under the ordinary legal sufficiency standard. *Id*. at 67, 105 S.Ct. at 478.

We note that this approach has met with resistance over the years in the federal courts of appeals, *see Agofsky*, 516 F.3d at 283–84 (noting that *Powell* reaffirmed the *Dunn* rule because courts of appeal tried to erode its application), and with criticism from the legal scholars. *See generally* Eric L. Muller, *The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts*, 111 HARV.L.REV. 771, 794–820 (1998)(criticizing the lenity, equity, and state inability to appeal rationales underpinning *Powell*). We also note that the United States Supreme Court's holding in Powell was non-constitutional and rested on the high court's "supervisory powers over the federal criminal process," meaning that *Powell*'s holding is not binding on the states. *See Powell*, 469 U.S. at 65, 105 S.Ct. at 477. Although a large majority of states follow the federal approach to this issue, a minority of states have read their state law as providing defendants more protection against such inconsistent verdicts than that under federal criminal process. *See*, *e.g.*, *Travis v. State*, 98 A.3d 281, 303 (Md. 2014); *People v. Muhammad*, 959 N.E.2d 463, 467–68 (N.Y. 2011); *State v. Halstead*, 791 N.W.2d 805, 814 (Iowa 2010); *Brown v. State*, 959 So.2d 218, 220–221 (Fla. 2007); *DeSacia v. State*, 469 P.2d 369, 375, 378 (Alaska 1970)(pre-*Powell*).

Neither side offers any authority from the Texas Court of Criminal Appeals on how Texas courts should approach this issue, nor could we find any Court of Criminal Appeals cases directly on point in our research. The Court of Criminal Appeals has cited Powell only one time in passing in *Zuniga v. State*, 144 S.W.3d 477, 481 (Tex.Crim.App. 2004), *overruled by Watson*

10

*v. State*, 204 S.W.3d 404 (Tex.Crim.App. 2006). There, the State complained that "the Court of Appeals should not have used any purported inconsistency in the jury's verdicts as support for its holding that the evidence of appellant's guilt was factually insufficient." *Zuniga*, 144 S.W.3d at 481. The Court of Criminal Appeals did not discuss *Powell* in depth and instead only reviewed the trial evidence under the now-abrogated factual sufficiency standard. *Id*. at 485–87.

However, this Court previously followed the federal approach in *Viera v. State*, No. 08–10–00332–CR, 2012 WL 4101904 (Tex.App.--El Paso Sept. 19, 2012, pet. ref'd)(not designated for publication), *cert. denied,* 134 S.Ct. 267, 187 L.Ed.2d 150 (2013). We did not expound upon our rationale for following the federal approach in *Viera*, but absent further guidance from the high court on this issue, we will follow our previous approach—and that of our sister courts— and look to see only if there was sufficient evidence to support an aggravated assault conviction. *See Williams v. State*, No. 03–11–00598–CR, 2013 WL 6921489, at *6 (Tex.App.--Austin Dec. 31, 2013, pet. ref'd)(mem. op., not designated for publication), *cert. denied,* 135 S.Ct. 103, 190 L.Ed.2d 83 (2014); *Moore v. State*, No. 04–12–00490–CR, 2013 WL 3148650, at *1 (Tex.App.--San Antonio June 19, 2013, pet. ref'd)(mem. op., not designated for publication); *Dulaney v. State*, No. 10–08–00152–CR, 2010 WL 486742, at *1 (Tex.App.--Waco Feb. 10, 2010, pet. ref'd)(mem. op., not designated for publication); *Green v. State*, 233 S.W.3d 72, 84 (Tex.App.--Houston [14th Dist.] 2007, pet. ref'd); *Ward v. State*, 113 S.W.3d 518, 522-23 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd); *Jackson v. State*, 3 S.W.3d 58, 60-62 (Tex.App.--Dallas 1999, no pet.); *Ward v. State*, 938 S.W.2d 525, 528 (Tex.App.--Texarkana 1997, pet. ref'd); *Ruiz v. State*, 641 S.W.2d 364, 366 (Tex.App.--Corpus Christi 1982, no pet.).

We acknowledge that this case is arguably distinguishable because unlike other inconsistency cases, in which a jury viewing a shared set of facts could chose to convict for some

crimes and not others based on its lenity powers, this case involves an affirmative defense that would justify all the crimes charged and not merely murder. That being said, we still cannot say for certain whether the jury's verdict actually rested on an implicit self-defense finding, even under the unique circumstances presented. It would seem anomalous to us that a jury would convict on one charge and not another when a defendant essentially admits to the conduct but claims self-defense.

Then again, it is possible the jury believed the State proved the elements of aggravated assault by threat, but not murder. It is also conceivable that the jury could have disbelieved Ramos' self-defense claim and found that legally sufficient evidence underpinned both the murder and aggravated assault charges, but then chose the nullify the murder conviction. *Powell* suggests that such an act of lenity is a permissible jury function that should be insulated from appellate review. *See Powell*, 469 U.S. at 58, 105 S.Ct. at 473 (noting that courts recognized the jury's traditional role as a check on executive power and stating that "[t]he fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable . . . "); *Jackson*, 3 S.W.3d 61 (noting that verdict inconsistency may be evidence fact finder is "exercising its desire to be lenient, or executing its own brand of executive clemency"). Or it is possible that the jury otherwise made some mistake or reached an illegal compromise. In any event, we cannot definitively say what went through the jurors' minds in reaching their decision, and even the Texas Rules of Evidence largely prohibit inquiry into deliberations. *See* TEX.R.EVID. 606(b). Jury error may have occurred, but even if it did, "it is unclear whose ox has been gored." *Powell*, 469 U.S. at 65, 105 S.Ct. at 477.

We are also mindful of the jury's role as voice of the community, and of our role in not

overturning the jury's verdicts without just cause. Had the jury made a special finding that Ramos acted in self-defense, we would likely have had to enter judgments of acquittal on all included charges in the spectrum, per *Alonzo*, because the jury made a justification finding that superseded any conclusions to the contrary. *But see* TEX.CODE CRIM.PROC.ANN. art. 37.07, § l(a)("The verdict in every criminal action must be general."). However, because we are faced with a general verdict, we cannot speculate and jump to conclusions about the jury's decisionmaking process, and are forced to look only at the guilty verdict's legal sufficiency. Indeed, on remand in *Alonzo*, the Corpus Christi Court of Appeals reversed the appellant's conviction for the jury charge error, but noted in its harm analysis that it could not determine whether the jury believed *Alonzo*'s self-defense claim, or whether it convicted him on manslaughter because they believed he did not possess the requisite intent for murder. *See Alonzo v. State*, No. 13–09–00395–CR, 2012 WL 4758061, at *5-*6 (Tex.App.--Corpus Christi Oct. 4, 2012, no pet.)(mem. op. on remand, not designated for publication). Here, we find ourselves in the same predicament.

In sum, the mere existence of inconsistent verdicts is not enough to raise the specter of jury misconduct and justify the trial court's exercise of discretionary power in granting a new trial. Verdict inconsistency is also not enough to entitle Ramos to acquittal on the aggravated assault charge on legal sufficiency grounds simply because he pleaded self-defense. We must assess the legal sufficiency of the aggravated assault conviction on its own merits. Because Ramos does not otherwise dispute that the evidence underpinning that conviction was legally sufficient, and because in our independent review we confirm legal sufficiency, the trial court's new trial order could not have properly rested on legal sufficiency or jury misconduct grounds.

**B.**

13

## Jury Misinstruction

We next turn to Ramos' alternative argument. In his rehearing point, Ramos contends that the trial court erred by submitting the aggravated assault by threat charge when it was not a lesser-included offense of murder, which was the charge indicted. The State agrees, and so do we.

We review purported jury charge error under a two-step process. First, we must determine whether a charge error actually exists. *Silvas v. State*, No. 08-08-00199-CR, 2010 WL 3377775, at *2 (Tex.App.--El Paso Aug. 25, 2010, no pet.)(not designated for publication). If so, we then assess harm. *Id*. The level of harm needed to force reversal hinges on whether a defendant objected to the charge. If so, we will reverse upon a showing of "some harm." *Id*. If the defendant failed to object, we will only reverse where the defendant suffered "egregious harm." *Id*.

Because the State conceded error, and because we independently confirm the error, see *Hall*, 225 S.W.3d at 536-37, step one is established, and we turn to the issue of harm. Appellant objected to inclusion of the charge in the trial court. Thus, we will reverse upon a showing of some harm. Convicting a defendant on an unindicted, lesser-but-not-included offense is a due process violation. *Beasley*, 426 S.W.3d at 149. The Houston Court of Appeals has twice held under similar circumstances that allowing a defendant to be convicted based a wrongly-included State charge such as this one satisfies even the higher egregious harm standard. *Id*.; *see also Farrakhan v. State*, 263 S.W.3d 124, 145 (Tex.App.--Houston [1st Dist.] 2006, pet. granted), *aff'd*, 247 S.W.3d 720 (Tex.Crim.App. 2008). Because Appellant's due process rights were violated under the circumstances, and because nothing in the charge can mitigate this harm, reversal is proper. And since the trial court essentially reversed itself by ordering a new trial, we

are bound to affirm the order as a proper corrective measure.

Finally, we address the State's plea for an alternative disposition raised in its rehearing response. Ordinarily, the proper remedy here is to reverse and remand for a new trial on the "guilty" charge with instructions for the trial court to enter an acquittal judgment on the "not guilty" charge. The State has suggested that instead of remanding for a new trial when the evidence is legally sufficient to support conviction, we can reform Ramos' aggravated assault by threat conviction to reflect a conviction for aggravated assault by force. We disagree. Even if reformation were permissible to remedy jury charge error (case law strongly suggests it is not), and even if we could reform an aggravated assault by threat conviction to reflect a conviction for aggravated assault by force when neither crime is a lesser offense of the other (which also runs contrary to case law),[4] the jury acquitted Ramos of murder, which interposed a jeopardy bar against conviction for any lesser-included offense moving forward, including a conviction for aggravated assault by force. *Benavidez*, 323 S.W.3d at 182. The jury found Ramos guilty of aggravated assault by threat, and since that crime falls outside the murder jeopardy spectrum, re-trial here is proper. However, we cannot now reform a conviction on a charge outside of the murder spectrum to reflect a conviction for a charge within the murder spectrum after Ramos was acquitted of murder without violating Ramos' double jeopardy rights. More to the point, the

---

[4] The Court of Criminal Appeals has summarized the reformation power as follows:

> *[A]fter a court of appeals has found the evidence insufficient to support an appellant's conviction for a greater-inclusive offense*, in deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, that court must answer two questions: *1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense*; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? If the answer to either of these questions is no, the court of appeals is not authorized to reform the judgment. But if the answers to both are yes, the court is authorized—indeed required—to avoid the 'unjust' result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense.

*Thornton v. State*, 425 S.W.3d 289, 299-30 (Tex.Crim.App. 2014)[Emphasis added].

15

State's proposed remedy does not ameliorate the due process violation that stemmed from the misinstruction. Under these circumstances, we have no choice but to affirm the new trial grant.

## CONCLUSION

Issue One is overruled. The order granting a new trial is affirmed. We remand for further proceedings consistent with this opinion, and reform the judgment to reflect an acquittal on the murder charge in accordance with the jury's verdict.

October 30, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Publish)