COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

§

EX PARTE: LUIS RAMOS                    §

§

§

§

§

No. 08-17-00069-CR

Appeal from the

409th District Court

of El Paso County, Texas

(TC# 2016DCV3258)

# **O P I N I O N**

Luis Ramos was indicted for murder. At the close of evidence, the State requested that the jury be charged on the unindicted lesser offense of aggravated assault by threat. The jury acquitted Ramos of murder but convicted him of aggravated assault by threat. The trial court granted a new trial based in part on Ramos' contention that the aggravated assault by threat instruction was erroneously submitted to the jury. On rehearing in the State's initial appeal of this case, the State agreed with Ramos that the aggravated assault by threat charge was wrongly submitted, as aggravated assault by threat was not a lesser-included offense of murder. *See State v. Ramos*, 479 S.W.3d 500, 504, 509-10 (Tex.App.—El Paso 2015, no pet.)(op. on reh'g)(*Ramos I*).

We declined the State's invitation to reform the judgment to reflect a conviction for aggravated assault by force rather than by threat and instead followed the Texas Court of Criminal

Appeals' instructions in *Benavidez*[1] by (1) reforming the judgment to reflect an acquittal on the murder charge in accordance with the jury's verdict, (2) reviewing the improperly aggravated assault by threat charge for legal sufficiency to determine if a full acquittal was warranted, (3) finding that the aggravated assault by threat charge rested on legally sufficient evidence (which precluded us from rendering a full acquittal), and (4) affirming the trial court's new trial order as to the improperly submitted aggravated assault by threat charge because conviction on an unindicted offense rose to the level of "some harm" needed to show reversible error. *See id.* at 510; *see also Benavidez*, 323 S.W.3d at 182.[2]

The State did not appeal our judgment in *Ramos I*. Instead, the State re-indicted Ramos on one count of aggravated assault by threat. Ramos, in turn, filed a pretrial writ of habeas corpus seeking dismissal of the indictment, alleging that the new indictment violated the prohibition on double jeopardy. He also asserted that the State's new prosecution was collaterally estopped by the previous prosecution. The trial court granted the writ application and dismissed the indictment. The State has filed this appeal (*Ramos II*).

The question before this Court is whether Ramos must face the aggravated assault by threat charge when the facts underpinning the current indictment and the previous murder indictment in *Ramos I* are similar. Based on our understanding of the Texas Court of Criminal Appeal's holding

---

[1] *Benavidez v. State*, 323 S.W.3d 179, 182 (Tex.Crim.App. 2010).

[2] *Benavidez* involved a defendant charged with aggravated sexual assault, acquitted of the aggravated sexual assault charge, but convicted on a wrongfully-submitted, lesser-but-not-included unindicted charge of aggravated assault. *Benavidez*, 323 S.W.3d at 182. The Court of Appeals directed the trial court to enter a judgment of acquittal. The Texas Court of Criminal Appeals reversed, instructing the court of appeals to review the legal sufficiency of the improperly submitted charge to determine whether full acquittal was warranted. The Court stated that if there was legally insufficient evidence to justify conviction on the improper charge, a full acquittal was warranted, but if the conviction on the improper charge rested on otherwise sufficient evidence, the court of appeals should then determine whether charge error justified reversal on the improperly submitted charge.

in *Hall v. State*,[3] we hold that re-indictment is proper under the circumstances because aggravated assault by threat requires proof of facts that are not necessarily required to be proven in a prosecution for murder.

We reverse the judgment of the trial court and remand for further proceedings.

## BACKGROUND

We recounted the full facts adduced at trial in *Ramos I*, and need not repeat them at length here. In brief, this case arose out of a street fight involving Ramos and several others that took place outside of a house party in Northeast El Paso. The State alleged that during the fight, Ramos stabbed Angel Garcia in the throat with a knife. The medical examiner determined that Garcia died from a cut to the trachea, and the knife used in the stabbing was found at Ramos' apartment. Ramos largely argued self-defense.

### *The First Indictment*

In Cause No. 20110D01868, Luis Ramos was indicted for murder. The indictment alleged that on or about the 20th day of November, 2009, Luis Ramos:

PARAGRAPH A
did then and there intentionally and knowingly cause the death of an individual, namely, ANGEL GARCIA by stabbing ANGEL GARCIA about the neck with a knife.

And it is further presented that the said Defendant used and exhibited a deadly weapon, to-wit: a knife, during the commission of an immediate flight from said offense.

PARAGRAPH B
did then and there, with intent to cause serious bodily injury to an individual, namely, ANGEL GARCIA, commit an act clearly dangerous to human life, to wit: stabbing ANGEL GARCIA about the neck with a knife, that caused the death of the said ANGEL GARCIA.

And it is further presented that the said Defendant used and exhibited a deadly weapon, to wit: a knife, during the commission of and immediate flight from said

---

[3] 225 S.W.3d 524 (Tex.Crim.App. 2007).

offense.

### *The Second Indictment*

In Cause No. 20160D02189, in a document titled "Re-Indictment," Ramos was charged with one count of aggravated assault with a deadly weapon. The re-indictment alleged that on the date of the fight, Luis Ramos:

> did then and there intentionally or knowingly threaten ANGEL GARCIA with imminent bodily injury by swinging a knife at ANGEL GARCIA, and did use or exhibit a deadly weapon, to wit: a knife, during the commission of the assault,

> And it is further presented that during a period from April 20, 2011 until March 21, 2016, an indictment charging the above offense was pending in a court of competent jurisdiction, to wit: Cause No. 20110D01868 in the 409th District Court of El Paso County, Texas, styled the State of Texas v. Luis Ramos.

## DISCUSSION

In two issues, the State contends that the trial court erred both in granting the writ of habeas corpus and dismissing the indictment based on Ramos' double jeopardy and collateral estoppel arguments.[4]

### *Standard of Review and Applicable Law*

In a pretrial writ proceeding, the burden is on the applicant to establish his entitlement to habeas corpus relief. *See Ex parte Culver*, 932 S.W.2d 207, 212 (Tex.App.—El Paso 1996, pet. ref'd). In the context of a double jeopardy claim, the applicant must present sufficient evidence to support the allegation of double jeopardy. *Id*. We review the trial court's determination of facts for abuse of discretion and the trial court's determinations on questions of law *de novo*. *Ex parte*

---

[4] The State and Ramos both filed consolidated briefs for this case and Cause No. 08-17-00070-CR. Per an annotation on the notices of appeal, the State filed two notices of appeal because "[a]lthough the defendant's pretrial application for writ of habeas corpus was assigned a new civil cause number (2016DCV3258), the order purports to dismiss the underlying prosecution in criminal cause number 20160D002189. Out of an abundance of caution, the State will also be filing a notice of appeal of the trial court's order under that criminal cause number." Consequently, we docketed the appeals separately. This appeal deals with the order granting civil habeas corpus relief. The appeal in Cause No. 08-17-00070-CR deals with the order dismissing the criminal indictment. These two appeals are substantively indistinguishable.

*Quintana*, 346 S.W.3d 681, 684 (Tex.App.—El Paso 2009, pet. ref'd).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. CONST. AMEND. V; *see also* TEX.CONST. art. 1, § 14.

"A double jeopardy claim based on multiple punishments arises when the State seeks to punish the same criminal act twice under two distinct statutes under circumstances in which the Legislature intended the conduct to be punished only once." *Shelby v. State*, 448 S.W.3d 431, 435 (Tex.Crim.App. 2014). When an appellant complains of convictions stemming from different statutory sections being used to punish the same crime, we employ a so-called "elements" analysis to determine whether multiple punishments for the same criminal conduct are prohibited under double jeopardy principles. *Id*. at 436.

We begin our analysis with the *Blockburger*[5] test. Under *Blockburger*, we compare two offenses to see if one offense requires proof of facts that the other does not. *Shelby*, 448 S.W.3d at 436. *Blockburger* begins our double jeopardy analysis, but it does not end it. "We not only examine the statutory elements in the abstract but we also compare the offenses as pleaded, to determine whether the pleadings have alleged the same 'facts required.'" *Id*. Thus, even if the elements of two offenses technically differ enough to pass muster under *Blockburger*, we must still determine whether the Legislature intended to allow the State to prosecute the same conduct under different provision of the Penal Code and thereby in essence impose multiple punishments. *Id*. "Under this so-called cognate-pleadings approach, double-jeopardy challenges can be made even against offenses that have different statutory elements, if the same facts required to convict are alleged in the indictment." *Garfias v. State*, 424 S.W.3d 54, 58-59 (Tex.Crim.App. 2014).

---

[5] *Blockburger v. United States*, 284 U.S. 299 (1932).

The Texas Court of Criminal Appeals has set forth a list of non-exclusive factors to use in determining whether the Legislature intended to authorize multiple punishments under separate provisions of the Penal Code for a single course of conduct. These factors include:

1)   Whether the offenses are in the same statutory section;

2)   Whether the offenses are phrased in the alternative;

3)   Whether the offenses are similarly named;

4)   Whether the offenses have common punishment ranges;

5)   Whether the offenses have a common focus;

6)   Whether the common focus tends to indicate a single instance of conduct;

7)   Whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger*; and

8)   Whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different from double-jeopardy purposes.

*Id*. at 59.

Factor five, which deals with the "focus" or "gravamen" of a penal provision, "should be regarded as the best indicator of legislative intent when determining whether a multiple-punishments violation has occurred." *Garfias*, 424 S.W.3d at 59.

*Analysis*

This is an extremely difficult case turning largely on the application of criminal procedure. Part of what makes this case difficult is the subtle shift in the parties' position since this Court's decision in the original State's appeal. In *Ramos I*, Ramos argued that the Texas Court of Criminal Appeals' decision in *Hall v. State* established that aggravated assault by threat was not a lesser-included offense of murder, meaning that the aggravated assault by threat charge was erroneously submitted to the jury over Ramos' objection. The State agreed there was a problem with the jury

6

charge under *Hall*, and we, too, found that the jury charge was erroneously submitted because the Texas Court of Criminal Appeals held in *Hall* that aggravated assault by threat was not a lesser-included offense of murder. We also found that conviction on an unindicted lesser-but-not-included offense constitute "some harm" under the standard of review for jury charge errors. *Ramos I*, 479 S.W.3d at 509-10.

Now in *Ramos II*, it is the State offering *Hall* as the main case supporting its position. If, the State says, aggravated assault by threat is *not* a lesser-included offense of murder under *Hall* for jury charge purposes, then aggravated assault by threat is also not a lesser-included offense of murder for double jeopardy purposes. That means, in the State's eyes, that although Ramos won the battle with *Hall* on the wrongly-submitted jury charge issue, Ramos must lose the double jeopardy war because *Hall* also clears the way for re-indictment on an aggravated assault by threat charge that falls outside the murder jeopardy spectrum.

By contrast, Ramos, who originally offered *Hall* as the main case supporting his position on rehearing in *Ramos I*, now seeks to refine and distinguish *Hall* on its facts in *Ramos II*. Ramos' argument is this: a double jeopardy analysis requires a content comparison between the murder indictment in *Ramos I* and the re-indictment for aggravated assault by threat. Here, under the cognate-pleadings approach, the trial court's decision here was proper because the first indictment and the second indictment both allege and require the State to prove essentially the same facts and thus, the same crime. As such, double jeopardy principles bar the State's subsequent prosecution on the aggravated assault by threat charge, even though the elements of that charge fall outside the murder spectrum from an elemental standpoint under *Blockburger*. Essentially, he argues that the case was close enough to *Hall*'s facts to demonstrate that the jury charge was wrongly submitted, but the case is also distinct enough from *Hall* to prevent retrial.

Although neither party raises this issue, we question whether under the law of the case doctrine it is even proper for us to revisit the previous determination we made in *Ramos I* that aggravated assault by threat was not a lesser-included offense of murder, particularly given that both Ramos and the State appeared to agree in *Ramos I* that aggravated assault by threat was not a lesser-included offense of murder. *See Sanchez v. State*, No. 08-11-00137-CR, 2014 WL 2810479, at *2 (Tex.App.—El Paso June 20, 2014, pet. ref'd)(not designated for publication)(law of the case provides that "absent exceptional circumstances, our resolution of an issue in an initial appeal generally controls our disposition of the same issue in subsequent appeals arising from the same case" unless the previous decision was "clearly erroneous" or there has been a change in the law in the interim).

We also question whether it makes intuitive sense to render an acquittal on a greater offense, reverse a conviction on an improperly submitted lesser-but-not-included offense, and then allow a defendant to claim a windfall even though a jury previously found him guilty based on legally sufficient evidence by preventing retrial on the lesser-but-not-included offense where a new indictment substantially parrots a previous indictment with minor changes. That seems to run counter to the Texas Court of Criminal Appeals decision in *Benavidez*, which in instructing the intermediate courts to review the legal sufficiency of the improperly submitted unindicted charge seems to suggest that the State has the right to retry the defendant on the lesser-but-not-included offense free from double jeopardy concerns. *See Beasley v. State*, 426 S.W.3d 140, 150 (Tex.App.—Houston [1st Dist.] 2012, no pet.)(applying *Benavidez* and stating that jeopardy would not attach to prevent State from pursuing a new indictment on the lesser-but-not-included offense where jury convicted the defendant on a wrongly-submitted lesser-but-not-included offense). Then again, Ramos' double jeopardy concerns are far from trivial; at least at first blush, the

8

allegations and evidence at the new trial will be essentially the same as they were in *Ramos I*. And if the gravamen of the re-indicted offense is the same as the gravamen of the previous offense, double jeopardy bars retrial.

Assuming for the sake of argument that there is a narrow window through which a crime which was improperly submitted as a lesser-but-not-included offense for jury charge purposes could still constitute a lesser-included offense barred by double jeopardy on re-indictment, we cannot see how that needle gets threaded in this case.

We once again return to *Hall* to ground our analysis. In *Hall*, the two charges being compared were murder resulting from the firing of a gun and aggravated assault by threat, with the threat being the intentional, knowing, or reckless display of a deadly weapon, namely a gun. *Hall*, 225 S.W.3d at 536. The Texas Court of Criminal Appeals held that, as pleaded in the indictment, aggravated assault by threat was not a lesser-included offense of murder because to prove aggravated assault by threat, the State was required to adduce two additional facts that did not necessarily have to be proven to establish murder: (1) the threatening of the victim; and (2) the display of a weapon. *Id*. at 536-37. And because the indictment for murder did not allege "threats or display," aggravated assault by threat could not be considered to be a lesser-included offense of murder under the circumstances. *Id*. at 537.[6]

---

[6] The *Hall* Court compared the elements of murder as modified by the indictment and the elements of aggravated assault by threat contained in the jury charge as follows (the elements of aggravated assault by threat that did not

9

The State maintains that this case is like *Hall* because the indictment for aggravated assault by threat requires proof of two things that were not required to be proven in order to obtain a conviction for murder: (1) a threat; and (2) the swinging of the knife. Ramos points out that this case, unlike *Hall*, involves the allegation that a weapon was not just displayed, but swung. He also cites two cases in support of his argument that when a weapon is allegedly used rather than merely displayed, the element of threat is subsumed within and indistinguishable from the use of the weapon, meaning that the aggravated assault by threat charge becomes a lesser-included offense of murder because both involve proof of the same set of operative facts, i.e., the use of the weapon.

First, Ramos directs our attention to *Teeter v. State*, No. PD-1169-09, 2010 WL 3702360 (Tex.Crim.App. Sept. 22, 2010)(not designated for publication). In *Teeter*, a defendant was indicted for both attempted capital murder and aggravated assault on a police officer. The attempted capital murder charge listed "intentionally and knowingly point[ing] a gun" at a named police sergeant as the operative fact that "amounted to more than mere preparation which tended but failed to effect the commission" of the attempted murder. *Id*. at *4. The aggravated assault charge alleged that the defendant "intentionally and knowingly threatened" the police officer "with imminent bodily injury by using a deadly weapon." The Texas Court of Criminal Appeals held

---

have to be proven to establish murder are italicized):

| Elements of Murder: | Elements of Aggravated Assault by Threat: |
|---|---|
| (1) The appellant<br>(2) Caused the death of an individual<br>(3) By shooting the individual with a gun<br>(4) (a) with intent to cause the individual's death or<br>(b) (1) with intent to cause the individual serious bodily injury and (2) committing an act clearly dangerous to human life. | (1) The appellant<br>(2) *Threatened another individual* with imminent bodily injury<br>(3) Intentionally, knowingly, or recklessly,<br>(4) *By displaying a deadly weapon*, namely a gun. |

*See Hall*, 225 S.W.3d at 536. [Emphasis added].

10

that although attempted capital murder and aggravated assault were not the "same offense" under *Blockburger* because it required proof of a threat, the defendant could not be charged with both crimes without violating double jeopardy because "the act of threatening the complainant with imminent bodily injury by displaying a gun, is subsumed by the act of pointing a gun at the complainant with an intent to kill." *Id*. at \*6. However, the Texas Court of Criminal Appeals has designated that opinion as "do not publish," meaning that under the Texas Rules of Appellate Procedure, the opinion has "no precedential value and must not be cited as authority by counsel or by a court." TEX.R.APP.P. 77.3; *see also Morris v. State*, 554 S.W.3d 98, 115 n.11 (Tex.App.— El Paso 2018, pet. ref'd). As such, we cannot rely on it as a basis for decision in this case.

Ramos also refers us to *Meine v. State*, 356 S.W.3d 605, 609-10 (Tex.App.—Corpus Christi 2011, pet. ref'd). In that case, a defendant was charged with both attempted capital murder and aggravated assault by threat on a police officer after he fired a gun at a police officer and missed. The attempted capital murder count of the indictment alleged that the defendant "with the specific intent to commit the offense of capital murder" against two named police officers "intentionally and knowingly fired a gun" at the officers. *Id*. The aggravated assault count alleged that the defendant "intentionally and knowingly threatened" the named officers "with imminent bodily injury by firing a gun at them[.]" *Id*. at 610. The Thirteenth Court of Appeals held there were no facts unique to the aggravated assault charge that were not also included in the attempted murder charge, as "the same action—firing the gun—is the only evidence to demonstrate either the intent to threaten with imminent bodily injury or the intent to commit capital murder." *Id*. Consequently, the "act of pointing the gun with intent to kill, *without facts negating appellant's intent to threaten the complainants with imminent bodily injury*, leads us to conclude that the element of threat--an intention to cause apprehension of imminent bodily injury--is subsumed by

11

pointing the gun at them." [Emphasis added]. *Id*. The Thirteenth Court acknowledged the *Teeter* decision in a footnote, stating that while it could not cite to *Teeter* as precedent, the Court endeavored to make its decision consistent with *Teeter*.

Ramos argues that the operative facts in this case are analogous to those in *Meine*. Per the first indictment, the crime of murder involved the allegation that Ramos stabbed the victim about the neck with a knife. Per the second indictment, the crime of aggravated assault by threat would involve the State proving that Ramos threatened the victim by swinging a knife at the victim. The gravamen of these two indictments is the same—the aggravated assault by threat charge involved swinging a knife at the victim, and the act clearly dangerous to human life predicate for previous murder prosecution involved the swinging of a knife at the victim combined with the knife actually reaching its intended target. Although a subsequent prosecution is theoretically permissible under *Blockburger* because one penal code provision is not wholly subsumed within another penal code provision, under these circumstances, the gravamen of these two offenses is the same. The State would have to prove the same facts at the second trial that it did in the first trial that resulted in an acquittal on the murder charge. Ramos asserts this is impermissible under the cognate-pleadings test.

While we find the logic of our sister court in *Meine* persuasive, we cannot rely on *Meine*. *Meine* constitutes persuasive authority we may choose to follow, but *Hall* constitutes mandatory authority that we must follow, and since *Meine* does not distinguish or otherwise discuss *Hall* in a way we can rely on as a basis for decision, we cannot disregard *Hall* in favor of *Meine*'s logic. *Hall* is directly on point. Notwithstanding *Meine*'s intuitive conclusions regarding merger and overlap of elements and facts, we as an intermediate court of appeals are still bound by *Hall*'s holding that threat and display are separate elements of an aggravated assault by threat charge that

12

are not subsumed within one another and that do not overlap with the elements of murder.

It is true that this case does not involve mere display of a knife, but the actual swinging of a knife. Still, proof of an actual threat and the intent to threaten the victim, informed by a victim's own ability to perceive a threat, remains necessary for a conviction of aggravated assault by threat, but not for a conviction of murder. *Cf. McGowan v. State*, 664 S.W.2d 355, 357-58 (Tex.Crim.App. 1984)(aggravated assault by threat charge could not be sustained where a defendant stabbed a woman who did not see the knife in his hand; the victim was stabbed in the back of the head, as there was no evidence the defendant had first threatened the victim); *accord Olivas v. State*, 203 S.W.3d 341, 349 (Tex.Crim.App. 2006)(interpreting *McGowan*). As for *Teeter*'s retreat from *Hall*'s logic, it is of no effect here because the Texas Court of Criminal Appeals has declared *Teeter* not publishable, and we are prohibited by rule from relying on "do not publish" decisions. Notwithstanding *Teeter*'s apparently contrary logic, *Hall* remains good law. We must apply it here.

Aggravated assault by threat is not a lesser-included offense of murder in this case. Re-indictment on that charge is not barred by double jeopardy. *Cf. Beasley,* 426 S.W.3d at 150 (jeopardy does not attach to prevent State from pursuing a new indictment where jury convicted the defendant on a wrongly-submitted lesser-but-not-included offense and the court of appeals reverses for jury charge error under *Benavidez*).[7]

---

[7] In his Appellee's brief, Ramos also raises collateral estoppel as a ground on which the trial court's ruling could rest. He argues that by acquitting Ramos of murder, the jury conclusively found that Ramos did not intentionally and knowingly cause the death of Angel Garcia by stabbing him about the neck with a knife and acting with intent to cause serious bodily injury by committing an act dangerous to human life. *See Ex parte Taylor*, 101 S.W.3d 434, 441 (Tex.Crim.App. 2002)(the collateral estoppel doctrine may be applied in criminal cases where the "very fact or point now in issue" was determined in the prior proceeding). However, at the first trial, the jury *did* convict Ramos of aggravated assault by threat—it was only the submission of that charge in the first place that was erroneous. Given this split verdict, it cannot be said that the jury conclusively found that Ramos did not engage in conduct such that the State is not collaterally estopped from a new prosecution. If anything, the split verdict suggests the first jury *did* believe that Ramos engaged in that conduct, meaning that the collateral estoppel on that point does not apply.

We sustain State's Issues One and Two.  The judgment of the trial court is reversed and we remand for further proceedings consistent with this opinion.


March 6, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Publish)